Zachary Rusk
1627 Tschache Lane #203
Bozeman MT 59715
435-557-1570
Petitioner, Pro Se

## US DISTRICT COURT, DISTRICT OF MONTANA
### 201 E Broadway St, Missoula, MT 59802

\*

**PLAINTIFF'S CIVIL RIGHTS COMPLAINT**
**(42 U.S.C. § 1983)**

ZACHARY RUSK,
        Plaintiff.

**DEMAND FOR DECLARATORY RELIEF**
**UNDER 42 USC 1983;**

**JURY DEMAND**

**vs.**        \*

MONTANA SUPREME COURT JUSTICES
MIKE MCGRATH, LAURIE MCKINNON,
JAMES RICE, BETH BAKER AND JIM SHEA
(IN THEIR OFFICIAL AND PERSONAL
CAPACITIES); 18TH JUDICIAL DISTRICT
COURT JUDGE RIENNE H. MCELYEA (IN
HER OFFICIAL AND PERSONAL
CAPACITY); BOZEMAN MONTANA        \*        Case No:
MUNICIPAL COURT JUDGE KARL SEEL (IN
HIS OFFICIAL AND PERSONAL
CAPACITY); BOZEMAN CITY ATTORNEY
ED HIRSCH (IN HIS OFFICIAL AND
PERSONAL CAPACITY); U.S. MARSHAL
AND BOZEMAN POLICE DETECTIVE
QUINN ELLINGSON (IN HIS OFFICIAL        \*        District Judge:
AND PERSONAL CAPACITY); CROMWELL
LAW FIRM PLLC; ATTORNEY JASON
ARMSTRONG OF CROMWELL LAW FIRM
PLLC, SHEENA BROADWATER, OFFICE OF
DISCIPLINARY COUNSEL & THOMAS
ROSEEN,
        Defendants.

\*

## INTRODUCTION

NOW COMES Plaintiff Zachary Rusk and acting pursuant to the FRCR 15 (a) (1) hereby respectfully submits his Civil Rights Complaint. Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress,42 U.S. Code§

1983.

## JURISDICTION

1.  Civil rights Action under 42 U.S.C § 1983 seeking damages and declaratory relief against Defendants for committing acts, under color of law, with the intent and for the purpose of depriving Plaintiff of rights secured under the Constitution and laws of the United States in the violation of due process of law and to retaliate against him for his exercise of constitutional rights granted to him under the US Constitution Amendment I-V- VII -XIV.

2.  Plaintiff's case arises under the United States Constitution and 42 U.S.C. Sections 1983. This Court has jurisdiction in this matter pursuant to 28 U.S.C. Sections 1331 and 1343.

3.  The declaratory and injunctive relief sought is authorized by 28 U.S.C. Sections 2201 and 2202, 42 U.S.C. Section 1983 and Rule 57 of the Federal Rules of Civil Procedure.
    Under Article III of the Constitution, federal courts can hear "all cases, in law and equity, arising under this Constitution, [and] the laws of the United States;" US Const., Art II/2.
    Allegations of unconstitutional state statute establishes a controversy sufficient for Article III jurisdiction. Ct INS v. Chadha, 462 U.S. 919.

4.  The Supreme Court has interpreted this clause broadly, finding that it allows federal courts to hear any case in which there is a federal ingredient; 'vagueness of statute', as herein alleged has its roots in doctrine covering the due process clauses in the Fifth and Fourteenth Amendments to the US Cons. [Osborn v. Bank of the US, 22 U.S. 738.] of personal autonomy, privacy & liberty.

5.  Jurisdiction of this court for the pendent claims is authorized by F.R.C.P. 18 (a) and arises under the doctrine of pendent jurisdiction by United Mine Workers v. Gibbs, 383 U.S. 71, includes any and all other applicable laws including under the Montana common law for abuse of process, action for intentional infliction of emotional distress & stress and civil conspiracy.

6.  VENUE is in Bozeman because at least one defendant resides in that district.

## PARTIES

7.  Plaintiff, Zachary Rusk is citizen of Montana lives at 1627 Tschache Lane #203 Bozeman Montana 59715.

8.  Defendant Karl Seel, Bozeman Montana Municipal Judge is an employee Bozeman Municipal court as a Judge;   Judge Karl Seel can be served at the main office located on 615 S 16th Ave #123, Bozeman, MT 59715.

9.  Defendants Supreme Court Justices Mike McGrath, Laurie McKinnon, James Rice, Beth Baker and Jim Shea, Montana Supreme Court Justices can be served at the Montana Supreme Court Clerk's Office 215 N. Sanders, Room 323 (P.O. Box 2030003) Helena, MT 59601.

10. Defendant 18th Judicial District Court Judge Rienne H. McElyea can be served at the Gallatin County Clerk of District Court Clerks Office of 615 S 16th Ave #302, Bozeman, MT 59715.

11. Defendant U.S. Marshal and Bozeman Police Detective Quinn Ellingson can be served at the Bozeman Police Department at 615 S 16th Ave #260, Bozeman, MT 59715

12. Defendant Attorney Ed Hirsch can be served at the Bozeman City Attorneys Office of 121 N Rouse Ave, Bozeman, MT 59715.

13. Private persons, jointly engaged with state officials in the challenged action, are acting 'under color' of law for purposes of Section 1983 actions. (Dennis v. Sparks. 449 U.S. 24).

14. Defendant, Cromwell Law firm PLLC is a law firm organized under the Montana law and apparently licensed to practice law at Cromwell Law, PLLC 1871 South 22nd Ave (P.O. Box 6692) Bozeman, MT 59771 and it is named on every paper involved in the state court law suit.

15. Defendant Jason Armstrong, Montana Licensed lawyer is an employee of Cromwell Law firm PLLC as a Montana licensed lawyer; Armstrong can be served at 1871 South 22nd Ave (P.O. Box 6692) Bozeman, MT 59771.

16. Defendant Thomas Roseen can be served at 17 W Lamme Street #102 Bozeman Montana 59715.

### FACTUAL BACKGROUND AND HISTORY

17. Plaintiff incorporates all previous paragraphs as if re-written herewith.

18. Plaintiff respectfully alleges that his constitutional rights, privileges and immunities have been violated while prosecuting his case No: CL 21-109, DV 22-236; SM 21-33, DV 21-432B & DA 21-0398 pursuant to his rights granted to him by the US Const. Amendment 1, 5, 7, & 14 and Montana Constitution, including Article I, Section 11. 13.

19. Plaintiff filed action No: DV 21-432B on or around 4/28/2021 at the 18th Judicial District Court, Bozeman, Montana, alleging that the defendants, Thomas Roseen, Cindy Roseen and Shawn Roseen slandered and libeled Plaintiff and caused caused him personal injuries including those that are pecuniary and non-pecuniary, such as reputation, a newly diagnosed PTSD condition, tortuous interference with his job prospects, landlord and living situations, along with and costs and fees to litigate.

20. Plaintiff filed action No: SM 21-33 on or around June 23rd 2021 at the Justice Court of Bozeman, Montana, alleging that the defendant, Thomas Roseen damaged Plaintiffs property.

21. Plaintiff filed action No: DA 21-0398 on or around September 28th 2021 at the Montana Supreme Court, as an appeal of 18th Judicial District Court Judge Rienne H. McElyea's decision littered with patently false statements.

22. Plaintiff filed a petition for an order of protection against Defendant Thomas Roseen as to case No: CL 21-109 on or around 11/12/2022 as to Roseen's rape, stalking and malicious harassment as to MCA 45-5-220, MCA 45-5-221, etc.

23. Plaintiff also filed a petition for an order of protection against Defendant Thomas Roseen's attorney Jason Armstrong (in CL 21-109, DV 22-236; SM 21-33, DV 21-432B & DA 21-0398) on or around 11/12/2022 as to Armstrongs stalking and malicious harassment as to MCA 45-5-220, MCA 45-5-221, etc.

24. Plaintiff filed a petition for rehearing as to action No: DA 21-0398 on or around 2/4/2022. Plaintiff filed a Motion for Contempt against Jason Armstrong as to action No: DA 21-0398 on or around 2/22/2022. A decision was rendered with patently false statements by Defendants Supreme Court Justices Mike McGrath, Laurie McKinnon, James Rice, Beth Baker and Jim Shea on or around March 22nd 2022.

25. CFS 21-090527 relates to Lindsay Shepherd #179 and Sgt McCormik #157 as to Roseen's rape. CFS 21-120789 relates to Jason Armstrongs Stalking and Malicious Harassment.

26. CFS 12-127205 & CFS 21-127243 relate to Anthony Taylor #111 as to Roseen's violation of Protective Order CL 21-109. CFS 21-112-039 relate to Lucas Chaffin's false arrest after Petitioner submitted less than an hour prior to a Motion for Default Judgement in SM 21-33, this report was originally initiated by Quinn Ellingson.

27. On July 5th 2021 11:29am MT Plaintiff sent Ellingson with an admission of Roseen engaging in Illicit Drug use, buying from his roommates Alec (who told Petitioner and Roseen together that his

grandfather was a former City Commissioner of 30 years and has "gotten him out of a lot of trouble before" and to not tell anyone about his illicit drug distribution) and Ryan who fit the description of a Homicide case for which Ellingson was in charge.

28. On July 12th 2021 at 12:09PM MT Plaintiff sent Quinn Ellingson an email requesting Quinn and Bozeman PD intervene to order Jason Armstrong to curtail his harassment and threats. On July 11th 2021 Plaintiff emailed Quinn Ellingson evidence and information about Thomas Roseen's stalking Plaintiff and Jason Armstrong's threats and harassment.

29. On July 11th 2022 Petitioner emailed Quinn Ellingson and Bozeman Police Officer Troy Frayley stating "filing a complaint with the inspector general". Between July 28th 2022-August 10th 2020, Quinn Ellingson falsely charges Plaintiff with the same type of complaints Petitioner was providing evidence of against Jason Armstrong and Thomas Roseen, among others. Attorney Ed Hirsch of the City Attorney office for Bozeman City, has been provided the same information, yet fails to charge all others similarly situation (while the legitimacy of the charges is vehemently denied) as to his unconstitutionally selective, arbitrary and discriminatory enforcement of law.

30. Misrepresentation, fraud, breach of fiduciary duties fraud in inducement fraud in omission; concealment are a large part of this complaint.

31. Jury trial is demanded under the Seventh Amendment to the Constitution.

32. Under the a practitioner has fiduciary duties of honesty and good faith, Uberima fidei; when a practitioner however practices or attempts to practice arts by communicating dishonesty or deceit, an unlawful act, such doctor is attempting to practice in the violation of law and under the law such act constitutes felony.

33. Defendants deceived Plaintiff and dishonestly suppressed evidence Plaintiff has against defendants.

34. Later the Defendant Supreme Court of Montana Justices adjudicated the appeal as to DV 21-432B / DA 21-0398 in the furtherance of conspiracy and by fraud upon the court perpetrated by the defendants', act calculated to deprive Petitioner of his constitutional rights fixed the defendants' pleadings by a decree issued on or around 03/22/2022.

35. Pursuant to 40-15-201 as to a temporary order of protection states under (1) a petitioner may seek a temporary order of protection from a court listed in 40-15-301. The petitioner shall file a sworn petition that states that the petitioner is in reasonable apprehension of bodily injury or is a victim of one of the offenses listed in 40-15-102, has a relationship to the respondent if required by 40-15-102, and is in danger of harm if the court does not issue a temporary order of protection immediately. In November 2021, Petitioner filed a Petition for a Temporary Order of Protection against Respondent. In this petition, Petitioner informed the court what has happened that has made Petitioner fear for his safety. The court reviewed the Petition, and determined probable cause to grant petition. Pursuant to MCA § 40-15-203(2), the court found that the "petitioner is in danger of harm if the court does not act immediately."    The Court Ordered that Respondent    Thomas Roseen be restrained from committing further acts of abuse or threats of abuse to Petitioner and ordered Respondent Thomas Roseen to stay at least 300 feet away from Petitioner and his residence. The Court further ordered Respondent Thomas Roseen restrained from assaulting, threatening, abusing, harassing, following, or stalking Petitioner and that Respondent Thomas Roseen must not harass, annoy, or disturb my peace or do anything to Petitioner's family members and friends, witnesses to Respondent Thomas Roseen's offenses, and other victims of Respondent Thomas Roseen's offenses. The Court additionally ordered that Respondent Thomas Roseen must not again take, hide, sell, damage or dispose of Petitioners property, as well as ordering Respondent Thomas Roseen to not telephone, email, write, contact or otherwise communicate, directly OR indirectly OR through a third party with Petitioner including

Petitioner's family members and friends, witnesses to Respondent Thomas Roseen's offenses, and other victims of Respondent Thomas Roseen's offenses.[1]

## STANDARD OF REVIEW

Pursuant to 40-15-102(1) A person may file a petition for an order of protection if:

(a)  the petitioner is in reasonable apprehension of bodily injury by the petitioner's partner or family member as defined in 45-5-206; or (b)   the petitioner is a victim of one of the following offenses committed by a partner or family member: (i)   assault as defined in 45-5-201; (ii)  aggravated assault as defined in 45-5-202; (iii)  intimidation as defined in 45-5-203; (iv)  partner or family member assault as defined in 45-5-206; (v)   criminal endangerment as defined in 45-5-207; (vi)  negligent endangerment as defined in 45-5-208; (2)   The following individuals are eligible to file a petition for an order of protection against the offender regardless of the individual's relationship to the offender: (a)   a victim of assault as defined in 45-5-201, aggravated assault as defined in 45-5-202, stalking as defined in 45-5-220, sexual assault as defined in 45-5-502, sexual intercourse without consent as defined in 45-5-503, or (6) A petitioner is eligible for an order of protection whether or not: (a)   the petitioner reports the abuse to law enforcement; (b)   charges are filed; or (c)   the petitioner participates in a criminal prosecution. (7) If a petitioner is otherwise entitled to an order of protection, the length of time between the abusive incident and the petitioner's application for an order of protection is irrelevant.

**45-5-220. Stalking** -- exemption -- penalty. (1) A person commits the offense of stalking if the person purposely or knowingly engages in a course of conduct directed at a specific person and knows or should know that the course of conduct would cause a reasonable person to:

A.  fear for the person's own safety or the safety of a third person; or

    **A.  suffer other substantial emotional distress.**

    **(2) For the purposes of this section, the following definitions apply:**

B.  "Course of conduct" means **two or more acts,** including but not limited to acts in which the offender directly or indirectly, by any action, method, communication, or physical or electronic devices or means, follows, monitors, observes, surveils, threatens, harasses, or intimidates a person or interferes with a person's property.

C.  "Reasonable person" means a reasonable person under similar circumstances as the victim. This is an objective standard.

(c) "Substantial emotional distress" means significant mental suffering or distress that may but does not necessarily require medical or other professional treatment or counseling.

**(3) This section does not apply to a constitutionally protected activity.**

**(7) Attempts by the accused person to contact or follow the stalked person after the accused person has been given actual notice that the stalked person does not want to be contacted or followed**

---

[1] Note Under Uniform Rule6(c), a failure to file an answer is an admission that the motion is well taken. In DA 21-0398 (stemming from DV 21-432B within this District Court..) Thomas Roseen, Cindy Roseen, Shawn Roseen and Jason Armstrong failed to file an answer to "DA 21-0398 Other -- Motion - Opposed.pdf (Appendix B)" & "DA 21-0398 Rehearing -- Petition.pdf"(Appendix C). An answer was due by or before March 11th 2021. Montana Supreme Court's Appellate Case Manager Diane Anderson stated on a phone call just before 5pm Friday March 11th 2022 that the Court has not received any mail response, and that any mailing would be late come Monday but Armstrong could have still filed a response electronically by 11:59pm March 11th 2022. It is past March 11th 2022 and no responses have been filed to the above noted filings (attached). Under Uniform Rule6(c), a failure to file an answer is an admission that the motion is well taken. The resulting admissions as to the contents of the filings, constitute new evidence, information and admissions, of the four above noted subjects, as to further violations of 45-5-220, 45-5-221; among others.

constitutes **prima facie evidence that the accused person purposely or knowingly followed, harassed, threatened, or intimidated the stalked person.**

**45-5-221. Malicious intimidation or harassment relating to civil or human rights** -- penalty. (1) A person commits the offense of malicious intimidation or harassment when, **because of another person's** race, creed, religion, color, national origin, or **involvement in civil rights** or human rights activities, the person purposely or knowingly, with the intent to **terrify, intimidate, threaten, harass**[2], annoy[3], or offend[4]:

> a. causes bodily injury to another; (b) causes reasonable apprehension of bodily injury in another; or (c) **damages**, destroys, or defaces any **property[5] of another** or any public property.

**Retaliation** Is a Form of **Harassment or Discrimination**. Fear of retaliation should not prevent you from making a valid complaint or participating in an investigation of your complaint. Whoever threatens another with any injury to his person, **reputation or property**, or to the person or reputation of any one in whom that person is interested, with intent to cause alarm to that person, or to cause that person to do any act which he is not legally bound to do, or to omit to do any act which that person is legally entitled to do, as the means of avoiding the execution of such threat, commits **criminal intimidation**.

Merriam Webster defines the verb as "***to make timid or fearful; frighten; especially to compel or deter by or as if by threats***." We start to get to the root of the underlying issue, however, when you look up the word "**intimidating**" in the same dictionary: "causing a loss of courage or self-confidence; **producing feelings of fear or timidity**."

A person must show that they were subjected to unwelcome and unwanted conduct based on **protected conduct**, "In order to constitute harassment, the conduct must be unwelcome in the sense that the [person] *did not solicit or incite it*, and in the sense that the [person] regarded the **conduct as undesirable or offensive**." Morton v. Steven Ford-Mercury of Augusta, 162 Fed. Supp. 2d 1228, 1238 (10th Cir. 2001) (quoting Bales v. WalMart Stores, Inc., 143 F.3d 1103, 1108 (8th Cir. 1998)).[6]

To establish pretext, evidence must be presented that state reasons for **actions are false** 'by *showing weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the proffered reasons for the actions* which could lead a reasonable fact-finder to label the **asserted reason underworthy of credence**." See Rekstad v. First Bank System, Inc, 30 Fed. Appx. 842, 846 (10th Cir. 2002) (citation and internal quotation marks omitted). In other words, evidence must be

---

[2] An answer or plea is called **"frivolous"** when it is clearly insufficient on its face, and *does not controvert the material points of the opposite pleading*, and is presumably interposed for **mere purposes of delay or to embarrass the plaintiff.** (Blacks Law)

[3] A proceeding is said to be **"vexatious"** when the party bringing it is uot acting bona fide, and merely wishes to **annoy** or embarrass his opponent, or when it is not calculated to lead to any practical result. (Blacks Law)

[4] "Examples of Stalking in Montana include **Making false accusations**." https://www.findlaw.com/state/montana-law/montana-stalking-laws.html Montana Stalking Laws Created by FindLaw's team (https://www.*ndlaw.com/company/our-team.html) of legal writers and editors | Last updated June 20, 2016

[5] Rights to Sue and Causes of Action in Common Law are referred to as a "chose", and are considered an asset, therefore property. Also see Prudential Standing.

[6] "[I]f the nature of an [persons'] environment, however unpleasant, is not due to [**constitutionally protected activity**], [s/he] has not been a victim of ... [harassment and/or discrimination] as a result of that environment." Stahl v. Sun Microsystems Inc., 19 F.3d 533, 538 (10th Cir. 1994).

provided that the person didn't really believe it's proffered reasons for action and thus may have been pursuing a **hidden [discriminatory, harassing, and/or retaliatory] agenda**."

"**Retaliatory actions** are broadly defined to **harassing behavior**" — What are Discrimination, Harassment, Harassing Conduct https://www.doi.gov › anti-harassment › definitions

Chose (pronounced: /ʃoʊz/, French for "thing") is a term used in common law tradition to refer to rights in **property**, specifically a combined bundle of rights.[1] A chose describes the enforcement right which a party possesses in an object. The use of chose extends from the English use of French within the courts.[2] In English and commonwealth law, all personal things fall into one of two categories, either choses in action or choses in possession.[3] English law uses a chose to refer to a bundle of rights, traditionally relating to property which may be utilised in certain circumstances. Thus, a chose in action refers to a bundle of personal rights which can only be enforced or claimed by a chose-holder bringing an action through the court to enforce the action. In English law, this category is enormously wide.[4] This is contrasted with a chose in possession which represents rights which can be enforced or acquired by taking physical possession of the chose. This may be, for example a legal mortgage.[5] Both choses in possession and choses in action create separate proprietary interests. What differs between each is the method in which each chose may be enforced. This is dependent on the possessory nature of the reference object.[6]

Alternative, historical uses includes a chose local, a thing annexed to a place, such as a mill; a chose transitory, something movable that can be carried from place to place.[citation needed] **A chose in action or thing in action[7][8] is a right to sue**. It has been made trite law, since Torkington v Magee, that a chose in action is a legal expression used to describe all personal rights of property which can only be claimed or enforced by action. It is therefore a categorisation of **interests in assets**, the enforcement of which cannot be secured without the use of a court.[4] It is an intangible property right recognised and protected by the law, that has no existence apart from the recognition given by the law, and that confers no present possession of a tangible object.[9] Since incorporeal assets such as claims for repayment of debts, or assigned rights in contracts cannot be subject to possession, they cannot be categorised as choses in possession.[10] In certain circumstances, the chose in action creates a separate proprietary right, independent from the property in which it may reference.[11] This new **property** can be subject to charges or can be assigned. For example, a right to enforce and receive payment for a debt, obtain money by way of damages for breach of contract, or receive recompense for a wrong is a chose in action. Two consequences result from this, firstly, they are claims which cannot be executed by the chose-holder without the enforcement of legal proceedings. Second, these examples may be themselves assigned, novated, or otherwise used by the chose-holder.[12] If the economic value of the asset is the right to sue. Historically, documents which represented a title to a chose in action of a particular kind, such as bonds or other documentary intangibles were themselves chose in possession because, similar to promissory notes they were negotiable and thus could be physically seised. That is to say, they were transferred solely by delivery of the document themselves. Today, most bonds and other financial instruments have been dematerialised and are issued as a single global note.[7]

## JUDICIAL CANNONS

An abuse of discretion is a polite way of saying a trial judge has made such a bad mistake ("clearly against reason and evidence" or against established law) during a trial or on ruling on a motion that a person did not get a fair trial. A court of appeals will use a finding of this abuse as a reason to reverse the trial court judgment. Examples of "abuse of discretion" or judges' mistakes include not

---

[7] https://en.wikipedia.org/wiki/Chose

allowing an important witness to testify, making improper comments that might influence a jury, showing bias, or making rulings on evidence that deny a person a chance to tell his or her side of the matter. This does not mean a trial or the judge has to be perfect, but it does mean that the judge's actions were so far out of bounds that someone truly did not get a fair trial.

Judicial-Conduct and Judicial-Disability Proceedings. Rule 3(h) defines "cognizable misconduct" as including "conduct prejudicial to the effective and expeditious administration of the business of the courts" and "conduct occurring outside the performance of official duties if the conduct might have a prejudicial effect on the administration of the business of the courts, including a substantial and widespread lowering of public confidence in the courts among reasonable people." See https:// www.law.upenn.edu/newsevents/calendar.php/ seminars/ regblog.org#date/20130220

Canon 2 of the Code of Conduct for United States Judges provides: "A Judge Should Avoid Impropriety And The Appearance of Impropriety In All Activities." The Commentary to Canon 2A states that "An appearance of impropriety occurs when reasonable minds, with knowledge of all the relevant circumstances . . . would conclude that the judge's honesty, integrity, impartiality, temperament, or fitness to serve as a judge is impaired. Public confidence in the judiciary is eroded by irresponsible or improper conduct by judges." (Emphasis added.) Canon 3A provides that a "judge should be patient, dignified, respectful, and courteous" to all persons "with whom the judge deals in an official capacity." (Emphasis added.) See Code of Conduct for United States Judges, Canon 1 (". . . A judge should maintain and enforce high standards of conduct and should personally observe those standards[.]").

The Judicial Conference's Commentary on Rule 3 states that the Code of Conduct for United States Judges may be "informative" in determining whether a judge has engaged in conduct "prejudicial to the effective and expeditious administration of the business of the courts." The Code "is designed to provide guidance to judges . . . ," and federal judicial discipline decisions have cited and relied on the Canons. See, e.g., In re Complaint of Judicial Misconduct (Paine), 664 F.3d 332, 335 (U.S. Judicial Conference 2011) (stating that the Judicial Conference adopted the Code to "provide standards of conduct for application in judicial- conduct and judicial- disciplinary proceedings brought pursuant to the Act. Commentary to Canon 1.

Canon 1 of the Code of Conduct for United States Judges provides that "[a] judge should uphold the integrity and independence of the judiciary." (Emphasis added.) The explanation of Canon 1 states that an "honorable judiciary is indispensable to justice in our society. A judge should maintain and enforce high standards of conduct and should personally observe those standards, so that the integrity and independence of the judiciary may be observed." (Emphasis added.) The Commentary to Canon 1 further provides that "[d]eference to the judgments and ruling of courts depends on public confidence in the integrity and independence of judges." (Emphasis added.)

A Judges lack of expeditiousness by failing to rule on pending motions for periods or lengths of up to a year at times, especially on motions which require expedited treatment such as discovery motions, along with added commentary, devoid of evidence of fact, violate Canon 1. When a judge does this, they have repudiated fundamental national, moral, and constitutional principles of equality. They have repudiated basic, indisputable principles of federal constitutional law as established by decisions of the United States Supreme Court. They have expressed "contempt" toward the United States Supreme Court rules and generally disparaged the Supreme Court. Their conduct neither "maintains" nor "observes" a "high standard of conduct," as required by Canon 1. Their inflammatory, hostile rhetoric severely undermines "public confidence" in the federal judiciary.

Canon 2 of the Code of Conduct for United States Judges provides that "a judge should avoid impropriety and the appearance of impropriety in all activities." (Emphasis added.) Canon 2A is entitled

"Respect for Law." It provides that "A judge should respect and comply with the law and should act at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary." (Emphasis added.) This rule is "critical—the judiciary's ability to decide cases efficiently and effectively would be severely impaired, and public confidence in the courts would be undermined, if litigants had reason to suspect judicial bias. In other words, 'to perform its high function in the best way "justice must satisfy the appearance of justice."'" (In re Complaint of Judicial Misconduct (Paine), 664 F.3d 332, 335 (U.S. Judicial Conference 2011) (citing and quoting In re Murchison, 349 U.S. 133, 136 (1955) (quoting Offutt v. United States, 348 U.S. 11, 14 (1954)).)

The Commentary to Canon 2A provides in relevant part: "An appearance of impropriety occurs when reasonable minds, with knowledge of all the relevant circumstances disclosed by a reasonable inquiry, would conclude that the judge's honesty, integrity, impartiality, temperament, or fitness to serve as a judge is impaired. Public confidence in the judiciary is eroded by irresponsible or improper conduct by judges. A judge must avoid all impropriety and appearance of impropriety. This prohibition applies to both professional and personal conduct. A judge must expect to be the subject of constant public scrutiny and accept freely and willingly restrictions that might be viewed as burdensome by the ordinary citizen." (Emphasis added.) (See also In re Complaint of Judicial Misconduct (Paine), 664 F.3d 332, 335 (U.S. Judicial Conference 2011) ("The judiciary therefore must take every appropriate measure to instill public confidence in the impartial administration of justice. For this reason, and especially in view of the 'constant public scrutiny' that 'judge[s] must expect,' Commentary to Canon 2A, members of the judiciary are required to accept unique and heightened restrictions on their personal lives that would not pertain to ordinary citizens.").)

A lack of expeditiousness can constitute extreme impropriety and the appearance of impropriety that violate Canons 2 and 2A. A complainant can then submit that any "reasonable mind" would conclude that the judge's "integrity, impartiality, temperament, [and] fitness to serve as a judge" are "impaired" ( See Hon. Carl E. Stewart, Abuse of Power and Judicial Misconduct: A Reflection on Contemporary Ethical Issues Facing Judges, 1 U. St. Thomas L.J. 464, 477 (Issue no. 1, 2003) ("A hallmark of the judiciary has been its historical posture of neutrality and impartiality toward litigants and the disputes they bring to the courts for resolution. Ascendance to the bench therefore represents more than a mere cloak of repudiated and criticized fundamental constitutional principles declared by the United States Supreme Court.

Canon 3 of the Code of Conduct of United States Judges provides that "a judge should perform the duties of the office fairly, impartially, and diligently." (Emphasis added.) Canon 3A (3) provides that "[a] judge should be patient, dignified, respectful, and courteous" to all persons "with whom the judge deals in an official capacity." The Commentary to Canon 3A states that "[t]he duty to be respectful includes the responsibility to avoid comment or behavior that could be interpreted as harassment, prejudice or bias."

A Judge's unduly delaying tactics, evince a dramatic and appalling lack of "fairness" and "impartiality." Based upon the afore, Plaintiff cannot reasonably expect "fairness" or "impartiality" from that Judge. Further, no objective observer could conclude that the treatment of the party in such a case would be consistent with "the duty to be respectful."

Canon 3A(6), states: "A judge should not make public comment on the merits of a matter pending or impending in any court." (Emphasis added.) The Commentary explains that the prohibition against public comment "about the merits of a pending or impending matter continues until the appellate process is complete. If the public comment involves a case from the judge's own court, the judge should take

particular care so that the comment does not denigrate public confidence in the judiciary's integrity or impartiality, which would violate Canon 2A."

Canon 4 recognizes that a judge may engage in "extrajudicial activities, including lecturing on both law-related and nonlegal subjects." However, Canon 4 imposes important limitations on such activities, including that "a judge should not participate in extrajudicial activities that detract from the dignity of the judge's office [or] reflect adversely on the judge's impartiality . . . ." (Emphasis added.) Similarly, Canon 4 states that participation in extrajudicial activities is permissible only "[t]o the extent that the judge's . . . impartiality is not compromised . . . ."

## Title 42 U.S. Code § 1983

Title 42 U.S. Code § 1983 reads as follows: Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

The essential elements of due process law are notice, an opportunity to be heard, and the right to defend in an orderly proceeding." Fiehe v. R.E. Housholder Co., 125 So. 2, 7 (Fla. 1929). "To dispense with notice before taking property is likened to obtaining judgment without the defendant having been summoned." Mayor ofBaltimore vs. Scharf, 54 Md. 499, 519 (1880).

"An orderly proceeding wherein a person is served with notice, actual or constructive, and has an opportunity to be heard and to enforce and protect his rights before a court having power to hear and determine the case. Kazubowski v. Kazuboswki. 45 I1L2d 405, 259, N.E.2d 282. 290." Black's Law Dictionary, 6th Edition, page 500.

"Aside from all else, 'due process' means fundamental fairness and substantial justice. Vaughn v. State, 3 Tenn, Crim.App. 54, 456 S.W.2d 879. 883." Blacks Law Dictionary, 6th Edition, page 500. Owen v. City of Independence.

"The innocent individual who is harmed by an abuse of governmental authority is assured that he will be compensated for his injury." Ryan v. Commission on Judicial Performance, (1988) 45 Cal. 3d 518, 533.

Before sending a person to jail for contempt or imposing a fine, judges are required to provide due process of law, including stricter adherence to the procedural requirements contained in the Code of Civil Procedure. Ignorance of these procedures is not a mitigating but aggravating factor. Duncan v. Missouri, 152 U.S. 377,382 (1894).

Due process of law and the equal protection of the laws are secured if the laws operate on all alike, and do not subject the individual to an arbitrary exercise of the powers of government." Giozza v. Teiman, 148 U.S. 657, 662 (1893), Citations Omitted.

"Undoubtedly, it (the Fourteenth Amendment) forbids any arbitrary deprivation of life, liberty or property, and secures equal protection to all under like circumstances in the enjoyment of their rights.... It is enough that there is no discrimination in favor of one against another of the same class. ...And due process of law within the meaning of the [Fifth and Fourteenth] amendment is secured if the laws operate on all alike, and do not subject the individual to an arbitrary excise of the powers of government." Traux v. Corrigan, 257 U.S. 312, 332. "Our whole system of law is predicated on the general fundamental principle of equality of application for the law. "All men are equal before the law," "This is a government of laws and not of men," "No man is above the law," are all maxims showing the spirit in which legislatures, executives, and courts are expected to make, execute and apply laws. But the framers and adopters of the (Four- teenth) Amendment were not content to depend...upon the spirit of equality which might not be insisted on by local public opinion. They therefore embodied that spirit in a specific

guaranty." When a judge is known that s/he lacks jurisdiction, or acts in the face of clearly valid statutes expressly depriving him or her of jurisdiction, judicial immunity is lose. Rankin v. Howard, (1980) 633 F.2d 844, cert den. Zeller v. Rankin, 101 S.Ct. 2020, 451 U.S. 939, 68 L.Ed 2D 326.

Some Defendants urge that any act 'off a judicial nature' entitles the Judge to absolute judicial immunity. But in a jurisdictional vacuum, (that is, absence of all juris- diction) the second prong necessary to absolute judicial immunity is missing. Stump v. Sparkman, id., 435 U.S. 349.

Where there is no jurisdiction, there can be no discretion, for discretion is incident to jurisdiction." Piper v. Pearson, 2 Gray 120 cited in Bradley v. Fisher, 13 Wall. 335, 20 L.Ed. 646 (1872).

A Judge must be acting within his jurisdiction as to subject matter and person, to be en- titled to immunity from civil action for his acts. Davis v. Burris, 51 Ariz. 220, 75 P.2d 689 (1938)

"No judicial process, whatever form it may assume, can have any lawful authority out- side of the limits of the jurisdiction of the court or judge by whom it is issued; and an at- tempt to enforce it beyond these boundaries is nothing less than lawless violance." Able- man v. Booth 21 Howard 506 (1859)

No man in this country is so high that he is above the law. No officer of the law may set that law at defiance with impunity. All the officers of the government from the highest to the lowest, are creatures of the law, and are bound to obey it. United States v. Lee, 106 U.S., 196,220, 1 S. Ct. 240, 27 L.Ed. 171 (1882) Buckles v. King County 191 F.3d 1127. *1133 (C.A.9 (Wash.),1999)

Purpose of statute that mandated any person who under color of law subjected another person to deprivation of his constitutional rights would be liable to the injured party in an action at law was not to abolish immunities available at common law, but to insure that federal courts would have jurisdiction o f the constitutional claims against state officials. Act March 3, 1875, 18 Stat. 470. Butz. v. Economou 438 U.S. 478, 98 S.Ct. 2894 (U.S.N.Y.,1978)

**<u>Case law HAS held that judges are accountable.</u>**

See Com. v. Ellis, 429 Mass. 362, 371 (1999), where the Supreme Judicial Court of Massachusetts recognized that "Article 5 ... provides that officers of government 'are at all times accountable to [the people] "The relevant cases demonstrate that the factors determining whether an act by a judge is a "judicial" one relate to the nature of the act itself, i.e., whether it is a function normal ly performed by a judge, and the expectations of the parties, i.e., whether they dealt with the judge in his judicial capacity." 435 U.S. 349, 362 (emphasis added)

The Eleventh Amendment was not intended to afford them freedom from liability in any case where, under color of their office, they have injured one of the State's citizens. To grant them such immunity would be to create a privileged class free from liability and wrongs inflicted or injuries threatened. Public agents must be liable to the law, unless they are to be put above the law. See OLD COLONY TRUST COMPANY v. CITY OF SEATTLE ET AL. (06/01/26) 271 U.S. 426, 46 S. Ct. 552, 70 L. Ed at page 431. No officer of the law may set that law at defiance with impunity. See United States v. Lee, 106 U.S. 196,220 and Burton v. United States, 202 U.S. 344.

The Court in Yates v. Village of Hoffinan Estates, Illinois, 209 F. Supp. 757 (N.D. Ill. 1962) held that "not every action by a judge is in the exercise of his judicial function.... it is not a judicial function for a judge to commit an intentional tort even though the tort occurs in the courthouse. When a judge acts as a trespasser of the law, when a judge does not follow the law, the judge looses subject-matter jurisdiction and the judges' orders are void, of no legal force or effect. Simmons v. United States, 390 U.S. 377 (1968)

"The claim and excise of a Constitution right cannot be converted into a crime"... "a denial of them would be a denial of due process of law". Butz v. Economou, 98 S. Ct. 2894 (1978): United States v. Lee, 106 U.S. at 220, 1 S. Ct. at 261 (1882). "No man [or woman] in this country is so high that he is above the law. No officer of the law may set that law at defiance with impunity. All the officers of the

government from the highest to the lowest, are creatures of the law and are bound to obey it. Cannon v. Commission on Judicial Qualifications, (1975) 14 Cal. 3d 678, 694.

Acts in excess of judicial authority constitutes misconduct, particularly where a judge deliberately disregards requirements of fairness and due process. *Gonzalez v. Commission on Judicial Performance, (1983) 33 Cal. 3d 359, 371, 374.

Acts in excess of judicial authority constitutes misconduct, particularly where a judge deliberately disregards the requirements of fairness and due process. Owen v. City of Independence.

"The innocent individual who is harmed by an abuse of governmental authority is assured that he will be compensated for his injury." Scheuer v. Rhodes, 416 U.S. 232, 94 S. Ct. 1683, 1687 (1974).

Note: By law, a judge is a state officer. The judge then acts not as a judge, but as a private individual (in his person). When a judge acts as a trespasser of the law, when a judge does not follow the law, the Judge loses subject matter jurisdiction and then judges' orders are not voidable, but VOID, and of no legal force or effect.

The U.S. Supreme Court stated that "when a state officer acts under the state law in a manner violative of the Federal Constitution, he comes into conflict with the superior Authority of that Constitution, and he is in that case stripped of his official or representative character and is subjected in his person to the consequences of his individual conduct. The State has no power to impart to him any immunity from responsibility to the supreme authority of the United States." U.S. Fidelity & Guaranty Co. (State use of). 217 Miss. 576, 64 So. 2D 697.

When a judicial officer acts entirely without jurisdiction or without compliance with jurisdiction requisites he may be held civilly liable for abuse of process even though his act involved a decision made in good faith, that he had jurisdiction. Elliot v. Piersol, 1 Pet 328, 340, 26 U.S. 328, 340 (1828).

Under federal law, which is applicable to all states, the U.S. Supreme Court stated that "if a court is without authority, it's judgments and orders are regarded as nullities. They are no voidable, but simply void, and from no bar to a recovery sought, even prior to a reversal in opposition to them. They constitute no justification and all persons concerned in executing such judgments or sentences are considered, in law, as trespassers."

Federal tort law: judges cannot invoke judicial immunity for acts that violate litigants civil rights; Robert Craig Waters. Tort and Insurance Law Journal, Spr. 1986 21 n3, p509-516"

" ...the particulate phraseology of the constitution of the United States confirms and strengthens the principle, supposed to be essential to all written constitutions, that a law repugnant to the constitution is void, and that courts, as well as other departments, are bound by that instrument." Marbury v. Madison, 1 Cranch 137 (1803)

See also Thomas v. Collins, supra, 323 US 516, 531. Hence, the act of filing suit against a governmental entity represents an exercise of the right of petition and those invokes constitutional protection." City of Long Beach v. Bozek, 31 Cal. 3D 527, at 533-534 (1982).

"The very essence of civil liberty certainly consists in the right of every individual to claim the protection of the laws when he receives an injury." 1 Cranch 137 at 163 (1803).

"As the U.S. Supreme Court has held, the right to petition for redress of grievances is 'among the most precious of the liberties safeguarded in the bill of rights'. (Cities) Insep- arable from the guaranteed rights entrenched in the First Amendment, the right to petition for redress of grievances occupies a 'preferred place' in our system of representative government and enjoys a 'sanctity and a sanction not permitting dubious intrusions.' Thomas Collins, 323 US 516: 65 S.Ct. 315, 322. Indeed, 'It was not by accident or coincidence that the rights to freedom in speech and press were coupled in a single guarantee with the rights of the people peaceably to assemble and to petition for redress of grievances.' Id. at 323."

It seems to reason that if the filing is protected, then surely the object of the protected right of obtaining a due process guaranteed fair hearing of the grievance and redress thereon - is the very essence of the petition clause. In fact, the characteristic which distinguishes petition through court from other forms of petition is the access to compulsory process of law, wherein the parties are equal before the law. Without ultimate recourse to that compulsory process, there is no reason for government to listen to grievances at all, let alone to redress them fairly. "The purpose of the statute was to deter public officials from using the badge of their authority to violate persons' constitutional rights and to provide compensation and other relief to victims of constitutional deprivations when that deterrence failed." Carey v. Piphus, 435 U.S. 247,253 (1978)

On summary judgment, the judge appropriately may determine, not only the currently applicable law, but whether that law was clearly established at the time an action occurred. If the law at that time was not clearly established, an official could not reasonably be expected to anticipate subsequent legal developments, nor could he fairly be said to "know" that the law forbade conduct not previously identified as unlawful. ....If the law was clearly established, the immunity defense ordinarily should fail." Harlow et al v. Fitzgerald, 457 U.S. 800, 818 (1981).

## PRO SE CASE LAW

Haines v. Kerner, 404 U.S. 520 (1971) Plaintiff-inmate filed pro se complaint against prison seeking compensation for damages sustained while placed in solitary confinement. In finding plaintiff's complaint legally sufficient, Supreme Court found that pro se pleadings should be held to "less stringent standards" than those drafted by attorneys.

Ellis v. Maine, 448 F.2d 1325, 1328 (1st Cir. 1971) Pro se petitioner who asserted complete ignorance of the law subsequently presented a brief that was manifestly written by a person with legal knowledge. Court held that a brief prepared in any substantial part by a member of the bar must be signed by that member.

Nichols v. Keller, 19 Cal. Rptr. 2d 601 (1993) Plaintiff who consulted defendants' law firms regarding workers' compensation claim was not advised of potential for additional third party claim before statue of limitations expired. Defendants argued that plaintiff's representation was limited only to filing workers' compensation claim and no duty existed to advise plaintiff in any other matter. Court found that representation was not limited solely to workers compensation claim, and defendants should have advised plaintiff regarding third party claim.

Johnson v. Board of County Comm'rs, 868 F.Supp. 1226 (D. Colo. 1994) Former sheriff department workers bring sexual harassment suit against county sheriff in his individual and official capacities. Attorney representing sheriff enters limited appearance on behalf of his official capacity. Court finds that attorney cannot enter limited appearance on behalf of sheriff's official capacity. Attorney representing sheriff must act for the entire person, including individual and official capacities. Entering such limited appearance is not competent and zealous representation as required by ethical rules as it leaves officer undefended on individual capacity claims. Court further finds that ghostwriting of documents for pro se litigants may subject lawyers to contempt of court. Ghostwriting gives litigants unfair advantage in that pro se pleadings are construed liberally and pro se litigants are granted greater latitude in hearings and trials. Ghostwriting also results in evasion of obligations imposed on attorneys by statute, code, and rule, and involves lawyers in litigants' misrepresentation of pro se status in violation of ethical rules.

Laremont-Lopez v. Southeastern Tidewater Opportunity Ctr., 968 F.Supp. 1075 (E.D. Va. 1997) Over a period of time, pro se plaintiffs submitted pleadings that had been written by attorneys pursuant to discrete-task representation contracts. The attorneys did not sign the pleadings, and in most cases did not

appear as counsel of record. When ordered to show cause by the court as to why they should not be held in contempt of court, attorneys argued that the professional relationships created with the litigants ended once they had drafted the pleadings. Court held that there was insufficient evidence to show that the attorneys knowingly misled the court or intentionally violated ethical or procedural rules and declined to impose sanctions. However, court stated that the practice of ghostwriting pleadings without acknowledging authorship and without asking court approval to withdraw from representation was inconsistent with Fed. R. Civ. P. 11 and Rule 83.1(G) of the Local Rules for the United States District Court for the Eastern District of Virginia. Court stated that allowing attorneys to ghostwrite pleadings for pro se plaintiffs abused additional leeway given to pro se filings.

U.S. v. Eleven Vehicles, 966 F.Supp. 361 (E.D.Pa. 1997) Court finds that ghostwriting by attorney for a pro se litigant implicates an attorney's duty of candor to the court, interferes with the court's ability to supervise the litigation, and misrepresents the litigant's right to more liberal construction as a pro se litigant.

Wesley v. Don Stein Buick, Inc., 987 F.Supp. 884 (D.Kan. 1997) In suit brought by pro se plaintiff, defendants sought order requiring plaintiff to disclose whether she was an attorney or received the assistance of a lawyer. In expressing legal and ethical concerns regarding the ghostwriting of pleadings by attorneys, the court held the defendants were entitled to the order.

Ricotta v. California, 4 F.Supp.2d 961 (S.D. Cal. 1998) Attorney licensed in the State of California did not violate procedural, substantive, and professional rules of a federal court by lending some assistance to friends, family members, and others with whom she shared specialized knowledge. Attorney performed research and prepared rough drafts of portions of pro se litigant's pleadings in an action against various official defendants, but did not sign the documents. Because attorney did not gather and anonymously present legal arguments with the actual or constructive knowledge that plaintiff would use them in court, and because attorney did not engage in extensive, undisclosed participation that permitted plaintiff to falsely appear as being without professional assistance, attorney had not violated any rules.

Ostrovsky v. Monroe (In re Ellingson), 230 B.R. 426 (Bankr.D.Mont. 1999) Paralegal who helped a business draft and file bankruptcy papers was found to be engaged in the unauthorized practice of law. Court notes that if an attorney acted in the same manner as paralegal, that person would be guilty of "ghost writing," which is described as the act of undisclosed attorney who assists a self-represented litigant by drafting his or her pleadings as part of "unbundled" or limited legal services. Court also notes that ghostwriting violates court rules, particularly Fed.R.Civ.P. 11, as well as ABA Standing Committee Opinion 1414 in Ethics and Professional Responsibility.

Jones v. Bresset, 2000 W: 3311607 (47 Pa. D. & C 4th 60) Defendant was an attorney hired by plaintiff in the midst of plaintiff's bankruptcy proceedings. The plaintiff had already obtained counsel of record, and hired defendant solely for the purpose of securing an accounting in the bankruptcy proceeding. The defendant alerted plaintiff of limited scope of his representation, advising plaintiff that problems may arise outside the scope of his representation. Plaintiff commenced a legal malpractice suit against his attorney of record stating negligence, and included the defendant in the claim. The court found that since the defendant distinctly limited the scope of his representation and urged the plaintiff to hire separate counsel for other matters, the defendant had no legal duty to investigate or advise plaintiff on existence of malpractice by attorney of record.

Ostevoll v. Ostevoll, 2000 WL 1611123 (S.D. Ohio) Respondent argues that the Petition should be stricken pursuant to Fed.R.Civ.P. 11 because, although allegedly filed pro se, petitioner clearly received substantial assistance from counsel in the preparation and filing of the Petition. Court finds that if a

pleading is prepared in any substantial part by a member of the bar, it must be signed by that attorney to avoid misrepresentation.

Streit v. Covington & Crowe, 82 Cal.App. 4th 441 (2000) In a lawsuit, plaintiff's counsel of record requested that another firm make a "special appearance" at a summary judgment motion, appearing on behalf of counsel of record. Plaintiff filed a legal malpractice suit after a summary judgment was entered against her, arguing that the special appearance created an attorney-client relationship. The appellate court found that an attorney making a special appearance represents the client's interests and has a professional attorney-client relationship with the client. Further, the voluntary appearance created a limited representation status and not a true "special appearance".

Armor v. Lantz, 207 W. VA 672, 535 S.E.2d 737 (2000) Appellants brought legal malpractice suit against local attorney retained by Ohio lawyer in products liability case. Appellants claimed that West Virginia lawyer who acted as local counsel was liable for malpractice of Ohio lawyer. Court found that, while it was difficult to clearly define the role of local counsel according to West Virginia rules, the local attorney had effectively entered a limited representation agreement and was therefore not responsible for all aspects of the case or for the Ohio lawyer's conduct.

Duran v. Carris, 238 F.3d 1268 (10th Cir. 2001) Lawyer participated in ghostwriting appellate brief for a pro se litigant. Court holds that participation by an attorney in drafting otherwise pro se appellate brief is per se substantial legal assistance, and must be acknowledged by signature. An attorney must refuse to provide ghostwriting assistance unless purported pro se client specifically commits to disclose attorney's assistance to the court upon filing.

Lynne v. Laufer, No. A-2079-01T2, (N.J. Super. App. Div. Apr. 8, 2003) Attorney, with matrimonial client's consent after consultation, limited the scope of his representation to a review of the terms of a mediated agreement without going outside its four corners. Court holds that it is not a breach of the standard of care for an attorney under a signed precisely drafted consent agreement to limit the scope of representation to not perform such services in the course of representing a matrimonial client that he or she might otherwise perform absent such a consent.

Melvin Finance, Inc. v. Artis, 157 N.C. App. 716, 2003 WL 21153426 (N.C.App.) Defendant retained an attorney on a limited basis, following an action filed by the plaintiff to recover costs on a defaulted loan. Limited representation attorney agreed to file responsive pleadings and negotiate a settlement agreement, and filed a notice of limited appearance. While the defendant received notice of a scheduled hearing and forwarded it to his limited representation attorney, neither defendant nor attorney appeared at the hearing and, consequently, an arbitration award was entered for the plaintiff. Defendant filed a motion to set aside judgment, which was denied. On appeal, the defendant claimed the limited representation attorney's failure to appear at the hearing amounted to excusable neglect and that the judgment should be set aside. The court found that since the defendant received notice of the hearing and had retained the attorney on a limited basis, that the limited representation attorney's conduct did not constitute excusable neglect. The lower court decision was affirmed.

Sharp v. Sharp, 2006 WL 3088067 (Va.Cir.Court) Complainant and respondent were co-tenants of real estate property. The respondent appeared pro se during a hearing before the commissioner in chancery, but then hired an attorney who appeared in a limited capacity at several other hearings. On appeal, the court sought to determine whether or not the attorney could appear in a limited capacity and whether the attorney's appearance qualified him as official "attorney of record". The court found that it was not bound by agreements made between client and attorney and that a court may "require more of an attorney than mere compliance with the ethical constraints of the Rules of Professional Conduct". The

court found that the attorney could make a motion to withdraw once he completed the tasks agreed upon, but that the court had ultimate discretion in granting the withdrawal.

Discover Bank v. McCullough, 2008 W: 248975 (Tenn. Ct. App.) In a dispute over a bank card balance, cardholders chose to represent themselves after card issuer filed suit. The self-represented litigants mailed a response to court but then failed to appear at the hearing, which prompted the court to grant a default judgment to the card issuer. During the appeals process, the self represented filed papers not known within the jurisdiction. When the case reached the appellate court, the Court found that it did not have subject matter jurisdiction because the self represented litigants failed to file a court recognized notice. The court found that while it appreciated the difficulties encountered by self-represented litigants, it could not "abdicate its role as an impartial, neutral arbiter and become an advocate for the self-represented litigant".

Burgess v. Vitola, 2008 WL 821539 (N.C.Super.) In a legal dispute that surfaced over an alleged invasion of personal property, the plaintiff resided in North Carolina and the defendant resided in California. The defendant filed papers with the assistance of a California attorney but, on record, represented herself. The plaintiff sought recourse, arguing that assistance from counsel amounted to the unauthorized practice of law since the attorney was not licensed in North Carolina. As the Rules of Professional Conduct do not require an attorney who has provided drafting assistance to make an appearance as counsel of record, the court found that it had no authority to sanction the California attorney. It did, however, require that the defendant file an affidavit that she intended to proceed pro se and not seek legal assistance unless the attorney is licensed to practice in North Carolina.

Future Lawn, Inc v. Steinberg, 2008 Ohio 4127 Attorney was hired by appellant to handle a legal malpractice claim. The attorney was referred by appellant's general counsel, to act in a in a matter concerning the handling of an environmental report in a real estate transaction several years prior. A settlement was reached in the matter and around the same time, general counsel was replaced. Following a dispute regarding unpaid legal fees, appellants were sued by former general counsel. Appellants responded with a separate suit, alleging counsel had committed malpractice. They implicated the limited representation attorney, suggesting the attorney had an obligation to advise them of issues surrounding claims of general counsel's malpractice. The court found that representation by attorney was expressly limited to the original malpractice claim, and that no requirement existed for client consultation before limited the scope of representation. The attorney had no duty to investigate actions of general counsel.

Elmore v. McCammon (1986) 640 F. Supp. 905 "... the right to file a lawsuit pro se is one of the most important rights under the constitution and laws."
Jenkins v. McKeithen, 395 U.S. 411, 421 (1959); Picking v. Pennsylvania R. Co., 151 Fed 2nd 240; Pucket v. Cox, 456 2nd 233 Pro se pleadings are to be considered without regard to technicality; pro se litigants' pleadings are not to be held to the same high standards of perfection as lawyers.
Maty v. Grasselli Chemical Co., 303 U.S. 197 (1938) "Pleadings are intended to serve as a means of arriving at fair and just settlements of controversies between litigants. They should not raise barriers which prevent the achievement of that end. Proper pleading is important, but its importance consists in its effectiveness as a means to accomplish the end of a just judgment."

Puckett v. Cox, 456 F. 2d 233 (1972) (6th Cir. USCA) It was held that a pro se complaint requires a less stringent reading than one drafted by a lawyer per Justice Black in Conley v. Gibson (see case listed above, Pro Se Rights Section).
Picking v. Pennsylvania Railway, 151 F.2d. 240, Third Circuit Court of Appeals The plaintiff's civil rights pleading was 150 pages and described by a federal judge as "inept". Nevertheless, it was held "Where a

plaintiff pleads pro se in a suit for protection of civil rights, the Court should endeavor to construe Plaintiff's Pleadings without regard to technicalities."

Puckett v. Cox, 456 F. 2d 233 (1972) (6th Cir. USCA) It was held that a pro se complaint requires a less stringent reading than one drafted by a lawyer per Justice Black in Conley v. Gibson (see case listed above, Pro Se Rights Section).

Roadway Express v. Pipe, 447 U.S. 752 at 757 (1982)

"Due to sloth, inattention or desire to seize tactical advantage, lawyers have long engaged in dilatory practices... the glacial pace of much litigation breeds frustration with the Federal Courts and ultimately, disrespect for the law."

Sherar v. Cullen, 481 F. 2d 946 (1973) "There can be no sanction or penalty imposed upon one because of his exercise of Constitutional Rights."

Schware v. Board of Examiners, United State Reports 353 U.S. pages 238, 239. "The practice of law cannot be licensed by any state/State."

Sims v. Aherns, 271 SW 720 (1925) "The practice of law is an occupation of common right."

## THE PETITION[8]

The November 12th 2021 filed petition was 13 pages. Pages 7-8 included the following:

Description of Abuse: Thomas Roseen continues to stalk me on social media platforms, etc. Thomas created a number of account to message me, I immediately blocked him. These accounts were on a dating app. See attached evidence. Thomas and his lawyer have been harassing me with frivolous, vexatious and malicious lawsuits. They have now filed over six frivolous, malicious and vexatious cases against me simply in their intent to harass me and intimidate me to not be able to continue the serious case I filed in April of this year against them. Thomas Roseen continues to slander, libel and criminally defame me, including making statements that are patently false and purjurous. Thomas Roseen had his sister make false reports about me on June 26th and had his sister call my upstairs apartment mates a number of times. On June 2nd 2021 I sent Tom an email with the title no contact. In this email, I stated that he has "caused me duress and alarm" and to cease and desist from contacting me here-forward in any way shape or form, any venue or through anyone else. I told Tom this in April, as well. On May 1st 10:09am Tom emailed me in violation of my April request of him to cease and desist contact with me. In this email, Tom admitted that he is 'annoying' me and demanding me that I "respond" to him. On June 10th Tom was served a formal cease and desist 'all contact'. On June 25th Tom filed a frivolous, vexatious and malicious court petition that was denied including one page out of 601 pages. This one page included an email from Tom to himself on June 13th 2021 at 10:17am stating that he has violated my no contact cease and desist, among others, a number of times since he was served, and told to discontinue contact with me several times. On June 10th 2021 Shawn Roseen (Toms Brother) was served a request to cease and desist all contact with me. On July 21st 2021 at 1:37pm Shawn Roseen called me from his phone number of 603-581-8972. On May 6 2021at 5:41pm Matt Rothschiller (Tom's boss) emailed me stating "Hey there buddy. You are an asshole." On June 18th 2021 at 11:23am Matt Rothschiller emailed me stating "You are a douche bag." Jason Armstrong, Tom's lawyer, emailed me a number of times prior to July 12th. On July 12th 2021 I wrote Jason Armstong an email stating that he is forbidden to contact me via email or post anymore. On July 14th 2021 Jason was served a formal Cease and Desist letter. On July 15th 2021 at 10:55am Jason emailed me stating "I was served your cease and desist". Jason emailed me five more times on July 15th 2021 at 11:03am, 11:15am, 3:16pm, 4:49pm and 5:27pm. Jason included harassing, stalking, false and threatening content in each of these emails from him to me that caused me emotional

---

[8] Appendix I.

distress. Jason's numerous emails violating my above noted requests and C&D caused me extreme emotional distress in and of itself. In the no contact C&D Mr. Roseen and his siblings in Bozeman Montana were served, it expressly stated in bold at the top to only contact me through a "licensed attorney who is in good standing." They have been using Jason Armstrong who has just been found to have not been in good standing since 2011 up until this month (October 2021). Jason Armstrong has engaged in a plethora of Rule 11 violations, along with bogging down the courts here with completely irrelevant information and documents, grossly mischaracterized, much of which are actually patently false to distract from my cases against the Roseens while never answering to the actual claims that are backed by direct and clear evidence. Mr. Roseen, his client, also filed a frivolous and malicious 601 page page TOP on June 25th 2021 that was denied by the District Court. Sgt Owens called me and told me he told Jason Armstrong to only contact me through a third party process server in or around July. Deputy Frayley called me on or around July 1st and told me he will be telling the Roseens to only contact me through a third party process server or a licensed attorney in good standing. Jason Armstrong has sent me a plethora of irrelevant documents and physical mailings that are harassing as well. It is based on good information and belief that Jason Armstrong will do this again on or around November 4th 2021, just a few days away. [9]

### HEARING ON FEBRUARY 24th 2022[10]

In the hearing, Judge Seal stated that Mr. Roseen has been stalking Petitioner. In the hearing, Mr. Roseen admitted to engaging in non-consensual intercourse while under the influence of non-prescription drugs, such as alcohol. In the hearing, Mr. Armstrong, Roseen's counsel, made objections without valid reason. Judge Seel sustained almost all objections of Mr. Armstrong's as to Petitioner's questions of Mr. Roseen.[11] In cases where "motive matters," that is, punitive damages cases where the plaintiff must prove

---

[9] This is the same statement provided in the same dated petition for protective order against Jason Armstrong, which Judge Seel denied…

[10] Reciting From The 5Pg February 24Th 2022 Hearing Questions Which Was In Part Pulled From 14 Page Document Entitled "Thursday, February 24Th 2021 Hearing" Accompanied With 125 Pages Of Correlated Evidence In Exhibits Provided To The Court And Opposing Counsel Jason Armstrong By The Court's Officer/Bailiff At The February 24Th 2022 Hearing. Also Provided Was The Following: Ex-Parte Proposed Order On Motion For Medical, Counseling, And Other Costs Incurred By Or On Behalf Of The Petitioner As A Result Of Respondents Offense; Ex-Parte Proposed Writ Of Execution; Ex-Parte Motion For Order On Medical, Counseling, And Other Costs Incurred By Or On Behalf Of The Petitioner As A Result Of Respondents Offense; Proposed Order Ex-Parte Motion To Keep Certain Information Private Cl 21 109; Ex-Parte Motion To Keep Certain Information Private Cl 21 109; Ex-Parte Proposed Order On Costs And Fees After Judgement.

[11] **The Court misinterpreted and misapplied the rules and law as to the Motion in Lamine. Judge Seel made verbose, inappropriate, improper and unnecessary commentary prejudicing Petitioner and his case in first thirty minutes of the hearing.**

malice or fraud, or, for example, discrimination cases, the other side's prior bad acts are admissible. [12]
The questions objected to and sustained included if Mr. Roseen has contacted Petitioners friends or family, when Mr. Roseen signed up for Petitioners gym of several months, named, Access Fitness, among a number of very relevant issues as stated in the original petition for the temporary order of protection against respondent. Judge Seal objected to admissibility of Mr. Roseen's illicit drug use and activities, including his purchases from his Roomate Alec, and Mr. Roseen's initiation of non-consensual intercourse with regard to putting Cylicybin into tea and giving it to Petitioner.          In the hearing, Petitioner informed the Court that stalking also includes the stalker **lying** about their victim. Petitioner provided clear and direct evidence of slander and libel from the Roseen family, but this also extends into the broader community and professional networks, implicated by Roseen, including Montana State University, Go Fast Campers, Rocky Creek Farm, to name a few. The hearing materials also indicate that Mr. Roseen filed a declaration on or around July 7th 2021 in case number DV 21-432B. In this, Roseen used practically **the same information** that he used in his June 25th Denied TOP--denied at a preponderance of evidence standard (fsr more strict than "beyond reasonable doubt") in a higher (district) court. Roseen **requested the same relief**, a second time, **in the same district court** (*likewise with two cases filed thereafter in Municipal Court under Judge Seal where Judge Seal has made false statements about in former hearings on the matters, and against Petitioner/Mr. Rusk*).

The February 24th 2022 Hearing lasted 1hr and ten minutes and occurred between 10:58am-12:08pm.

10:59-11am Judge Seel stated "There are some pending issues here…**motions for contempt filed…all those motions are denied**."

11am-11:05:15am Judge Seel stated "There is a…motion in Lamine, which I'm not familiar with, but …read it, it looks like it's a motion in Limine filed by petitioner so we will review the requests made in that motion…regarding evidence. So Mr. Armstrong we're going to ask you your position on each of the 17 motions from the petitioner. As to motion one, Mr. Armstrong your position?…"The Court should not allow reference to other lawsuits…**generally**…largely the allegation here is that he was drugged and raped three times, why would anything else be of relevance…this is a pretty confusing motion and it seems like Mr. Rusk wants to prevent himself from providing evidence that he had originally referred to."

11:05:15 Mr. Rusk "**Your honor if I may clarify**."

11:05:16-11:05:18 Judge Seel "**No**…there will be no reference to other lawsuits in this case…"

11:05-11:07am. Mr. Armstrong objects.

11:07am Mr Rusk states "Your Honor, I am willing to let those cases come in that are directly related to Mr. Roseen and myself, more than happy to allow that."

11:07am Judge Seal "So you are withdrawing the motion in limine…"

---

[12] See Bihun v. AT&T Information Systems, Inc. (1993) 13 Cal.App.4th 976, 991: Litigants cannot use privilege as both a shield and a sword. In A&M Records, Inc. v. Heilman (1977) 75 Cal.App.3d 554, 566, the court held that a litigant claiming his constitutional privilege against self-incrimination in discovery could not then waive it and testify at trial. (See also Dwyer v. Crocker National Bank (1987) 194 Cal.App.3d 1418, 1432 ["courts have never allowed a plaintiff to use the self-incrimination privilege as a 'shield and sword'"]; see also In re Marriage of Hoffmeister (1984) 161 Cal.App.3d 1163, 1171 ["No reason appears … why evidence preclusion orders under A&M should not apply 'where relevant evidence is sought to be discovered … is withheld on the basis of attorney-client privilege.'"]) Hunter Tylo v. Spelling Entertainment Group (1997) 55 Cal.App.4th 1379: "Discovery of constitutionally protected information is on a par with discovery of privileged information and is more narrowly proscribed than traditional discovery." (Id. at p. 1387, citing Britt v. Superior Court (1978) 20 Cal.3d 844, 852-853.) The Hunter Tylo court also ruled that when privacy rights are at issue, the discovery sought must be "directly relevant to the litigation." (Id. at p.1387.) Also see Brenda L. v. Superior Court (1998) 65 Cal.App.4th 794.; Knoettgen v. Superior Court (1990) 224 Cal.App.3d 11; Mendez v. Superior Court (1988) 206 Cal.App.3d 557.

11:07am Mr. Rusk "I am providing scope."

11:07am Judge Seal "So then it's going to be denied and all the evidence can come in."

Judge Seel 11:07 "As to number two, respondents position"?

11:07am Mr. Armstrong "I dont have a copy of that with me."

11:09am-11:11am Judge Seel "So the second motion in limine suggested that…what is the respondents position…it seems like…"

11:11am Mr. Rusk "**May I clarify**."

11:11am Judge Seel "**No**."

11:12am Judge Seel "As to number four…**I don't understand…so it will be denied**."

11:13am-11:17 Judge Seel "**I have no idea what this means**..this case keeps getting weirder and weirder…seems like the parties keep taking the opposite position than I anticipated…maybe it's my anticipation that's wrong…I don't think that is what the motion says, and since it doesn't make any sense I'm going to deny it." Judge Seal states he **doesn't think that is what the motion says, meaning he thinks the motion says something, but then says it doesn't make sense and denies it**. Judge Seel cant say the motion says something, but also say it doesn't make any sense at the same time. *That* makes *no sense*.

11:12am Mr. Armstrong "Opinions regarding the standard of care for treating physicians is not applicable in this case."

11:19am Judge Seal "Is there evidence of fault by a medical care provider, Mr. Rusk?"

11:19am Mr. Rusk "There is evidence that could put that into question."

11:20am Judge Seel "Number fourteen respondents position?

11:20-11:21 Mr Armstrong "The Roseen family members have all been sued by Mr. Rusk." This statement is patently false. Only Thomas, Cindy and Shawn from Bozeman MT were sued and included in the DV-423B/DA-0398 case. Kathy, Mary and Eric Roseen, have never been sued by Mr. Rusk but entered false and perjurious statements in their declarations in case DV-423B/DA-0398.

11:23am Judge Seel "So we have addressed the **"17 motions" that are "in the "motion" for Limine"**..starting to look discouraging here…we're now down to an hour and a half…does petitioner think we are going to get this completed in an hour and a half?"

11:25 "Your honor I am going to stick to the facts and provide a specific piece of evidence for each. I will also show evidence of malicious stalking & harassment as to Mr. Roseen damaging and interfering with my property, there are more than two occurrences there as to MCA 45-5-220-221"

Mr Roseen was sworn in for questioning at 11:30am.

Mr. Roseen on On July 12, 2020 at 5:34 PM did you write me an email stating:

"**…I tend to way overthink and become very stuck in my head.**" (sic)? (Mr. Roseen stated "I don't remember that, but yes I said that"...)

Mr. Roseen, on March 6, 2021 at 6:59 PM you wrote me an email stating:

"Zach, I have decided to try something I am interested in, and it is my decision. Tom" (sic) Mr. Roseen, what did you decide to try and what was that 'something'? (Mr. Roseen invoked his fifth amendment right to not-self incriminate..)

Mr. Roseen on March 2, 2021 at 8:54 PM did you send me an email including an email you wrote Cindy Roseen on Mon, Feb 22, 2021 at 6:03 PM and did it include the following statements of yours? "**I am angry, and serious, and I need to tolerate less and teach people how to treat me.**" (Sic)

Mr. Roseen, on Sun, Mar 7, 2021 at 8:28 PM did you send me an email stating: "**You commented on my illogical or hypocritical approach to you seeing other people- I want you for myself** but don't want to commit to you. I am not oblivious to this characteristic. I also felt similarly with

Emilie and I recognized it and questioned it. We were close in college but when I saw her hanging out with other guys, I became upset, although I never expressed it. I knew that I was not ready to date her, because I was physically unattracted to her and because of other many unresolved personal issues, yet I did not want her to see other people. When we graduated and she began to date another guy, **I was angry and resentful of him**. **I felt like <u>she belonged to me</u>**, but I was incapable of having a relationship with her. I recognized that this was hypocritical, and I never acted on this feeling, but I questioned it. So, I have picked up on this thinking **pattern in myself**, and I am trying to work through it, but I did not communicate it to you." (Sic)? (Objected to and sustained)

"Discussion points for the meeting with **Greg**: Mr. Roseen who is Greg? (Objected to and sustained)

It's not couples counseling. It's facilitating a conversation to help me explain myself to you. This is part of my therapy." "-My feelings of inadequacy" "-My trouble accepting Zach's need to have sexual contact with other people- Do I feel envious or jealous? Do I take it as being inadequate? I think some of it comes from feeling left out" (sic) "-Do I receive some pleasure from emotional **self-abuse**?" Did you say those things Mr. Roseen? Mr. Roseen said yes.

Mr. Roseen between Mar 13, 2021 10:03 AM - On Mar 13, 2021 03:36 PM did you write me a text stating "There are things that I want to change, like my cleanliness and some parts of my hygiene." (sic) **"<u>I do not want you to take that plane ticket</u>**, but I understand if you do, and I cannot stop you." (Sic) "Please call me. **<u>I will come to Shari's if I don't hear from you.</u>"** & "I want you to tell me: "I am seeing person X today, and we are probably meeting at their house, the car or a hotel around this time." (Objected to and sustained)

Mr. Roseen, on April 7, 2021 at 8:56PM did you sent me an email entitled "Shawn, Cindy, Mary". In this email, Mr. Roseen states "**Thank you for <u>forgiving</u> me**. The group texts are next."? (Objected to and sustained)

Mr. Roseen, on April 2, 2021 at 7:21AM did you write me an email stating "**I want to find ways to decrease <u>my alcohol intake.</u>**" "**Try not to <u>raise my voice</u> when I feel triggered or upset**." For example, I will still find myself making a decision at work, and thinking "wait, why did I say that? **Is that true?**" Do you remember saying that? Mr. Roseen said yes.

Mr. Roseen, on April 7, 2021 at 9:01PM did you sent me an email entitled "group messages" (sic) including a text message from you to your immediate family on Mar 16, 2021at 10:02 PM stating "Hi everyone, I am so upset that this situation with Zach Rusk is happening, and that I must write this message. Zach has threatened to send all of you **lies** about me. I asked him not to, and he says he will not. However, if he sends you anything, please delete it immediately. Zach has email analytics that show if you have opened the email. **I am doing this at the request of Greg, my therapist. I also believe it is the right message to send."** (Sic)?" (Objected on grounds of hearsay from Mr. Armstrong. Mr. Rusk stated "I have the text as Exhibit I and it provides foundation as to lies that are included in stalking or the stalking statute. Objection sustained by the Court.

Mr. Roseen on April 8, 2021 at 1:14PM did you write an email stating "Hi everyone, I am so upset about this situation and I been working hard to try to resolve it. I need to begin by telling you that **<u>I lied to all</u> of you in my communications during the week of March 15th, when Zach and I were on the verge of breaking up**. I caused great confusion for everyone involved. **In my communications I said that Zach may send you all lies about me, but <u>this was not true.</u>** Do you remember saying that? Objected to by Mr. Roseen/Armstrong. Objection sustained)

Mr. Roseen, did you file a petition for a protective order of protection against me on June 25th 2021 in Montana's Eighteenth Judicial District Court with the case number DR 21-208C?

Mr. Roseen, was the DR 21-208C petition of yours denied? Mr. Roseen stated yes.

Mr. Roseen's in this June, 25th 2021 (DR 21-208C) Petition of yours did you write and/or sign a declaration or supporting affidavit using the following expressly stated phrases "My alcohol consumption has increased significantly over the past three months…" "…the large **sum of money** he owes me…" … **and his efforts to sue me…**" Objected to by opposing counsel, sustained by the Court but then Judge Seel stated if you want to make an offer of proof go ahead." Mr. Rusk stated if you look at the stalking statute of the **MCA 45-5-221 includes <u>interference with property</u> including such a <u>cause of action</u>, my property is a <u>chose</u>** in common law, which is property. This is a **<u>civil right</u>**. **Vexatious** conduct is filing the same thing in the same court, more than once, asking for the same relief and Mr. Roseen has done that **<u>four times</u>**. Objection sustained. That further constitutes malicious harassment. This would also especially cause any reasonable person to suffer tremendous mental and emotional distress, particularly one petitioning for redress for injuries sustained by Mr. Roseen, upon which Mr. Roseen violently attempts to impugn, as to Mr. Rusk's civil rights.

Mr. Roseen, did you file a declaration on or around July 7th 2021 in case number DV 21-432B? (Objected to by opposing counsel, sustained by the Court)

Mr. Roseen in your declaration July 7th 2021 in case number DV 21-432B did you use any of the same information that you used in your June, 25th 2021 (DR 21-208C) Petition to request the same relief within the same District Court but with a different Judge? (Objected to by opposing counsel, sustained by the Court)

Mr. Roseen, were you served a "**<u>Request to Cease and Desist</u>**" on June 10th 2021? Objected to by Mr. Armstong. Mr. Rusk stated 'it provides notice and that part of the stalking statute includes fair notice." (Objection overruled.) "Based on best evidence rule exhibit Exhibit P provides a copy of Cease and Desist and includes return of service. Exhibit P states "request to cease and desist all contact absent through a qualified and licensed attorney or process server who's license is in good standing".

Mr. Roseen, have you attempted to contact me, and/or contacted me, directly or indirectly since June 10th, 2021? Judge Seel stated 'there is an indication that there is some stalking that occurred, so objection overruled." Mr. Roseen asked 'what does indirectly mean". Mr. Roseen stated "I contacted you through my attorney'. Mr. Rusk asked if there are any other occurrences? Mr. Roseen stated no.

Mr. Roseen, did you cancel your membership at the Ridge downtown gym? Mr. Roseen stated yes.

Mr. Roseen, when did you sign up for Access Fitness? (Objected to by opposing counsel, sustained by the Court). Mr Rusk stated this is directly related to the petition and it's contents. Judge Seel stated 'not that issue'. Mr. Rusk further referred to an exhibit with regard to a voicemail to text from Sgt Detective Mccormick of the Bozeman PD.

Mr. Roseen prior to November 20th 2021, when was the last time you were within 300 feet of 211 N 10th Ave Bozeman MT 59715? Mr. Roseen stated May 30th 2021.

Mr. Roseen have you ever been within 300 feet of 1627 Tschache Lane Bozeman MT 59715? Mr. Roseen said no.

Mr. Roseen, how many cases have you filed against me? (Objected to by opposing counsel, sustained by the Court)

Mr. Roseen, in cases CL 21-86 and in TK 21-2093 in this Municiple Court, both involving you, did you request the same relief and did you use any of the same information that you used in your June, 25th 2021 (DR 21-208C) Petition & July 7th 2021 Declaration (filed in case number DV 21-432B)? (Objected to by opposing counsel, sustained by the Court)

Mr. Roseen, have you attempted to contact my friends? (Objected to by opposing counsel, sustained by the Court)

Mr. Roseen, have you attempted to contact my family? (Objected to by opposing counsel, sustained by the Court) Mr. Rusk stated that Mr Roseen contacting my friends and family is stalking, harrassing and absolutely relevant.

Mr. Roseen, in SM 21-33, was judgment rendered against you for **damaging my property**? (Objected to by opposing counsel, sustained by the Court)

Mr. Roseen are you aware that Montana Stalking laws or statutes include making false accusations? (Objected to by opposing counsel, sustained by the Court while Judge Seel stated that his decision to sustain the objection is not on the objected grounds, but for other reasons, yet provided no information as to his reasoning to either party.)

Mr. Roseen do you understand what non-consensual intercourse is? Mr. Roseen stated yes.

Mr. Roseen, Can you tell the court what you understand non-consensual intercourse to be? Mr. Roseen stated "I understand it to be…one party that does not consent to sexual activity with the other party."

Mr. Roseen, have you ever had intercourse with me while under the influence of any drug, such as alcohol or any other drug, that is not a prescription drug? Mr. Roseen stated "Yes"..

Mr. Roseen, did you purchase **Cylicybin** from your roommate Alec? Objected to and sustained…

Mr. Roseen did you ever **break up Cylicybin and put in tea and give that to me**? Objected to and sustained….

Judge Seal asked for closing argument from Mr. Rusk/Petitioner: Mr. Rusk stated "Mr. Roseen has been served a C&D on June 10th 2021, Mr. Roseen has admitted to violating cease and desists...which included Your Honor identifying the stalking occurrences, Mr. Roseen has admitted to having non-consensual intercourse, I don't know what else there is, aside from what was clearly objected to (and sustained), this is a clear case of stalking.

Judge Seel stated in his decision that Respondent was asked to not contact petitioner after July 21st. The Cease and Disist date was June 10th 2021, not July 21st... The July 21st date refers to  Mr. Roseen's brother, Shawn Roseen calling me and violating the June 10th Cease and Desist he was also served. But this was included in page 7-8 of 13 of the petition, as Judge Seel acknowledged on the record. This statement 'in the courts formal decision on the matter' demonstrates a very evident problem and fact subject to Judicial Misconduct and Disability and warrants removal of Judge Seel. Judge Seel has shown on the record that he is incapacitated and unable to execute his duties of office to not only effectively, but also expeditiously administer the Courts business. Out of an abundance of caution and as to the public interest and upholding the integrity of our judiciary, Judge Seel must be removed from office forthwith and permanently.

Judge Seel changed course, as stated in his decision, in addition, that there was not evidence of stalking, even though Judge Seal stated there was stalking that occurred from Mr. Roseen in his earlier statements and based on review of the evidence. In addition, Judge Seel, at the beginning of the hearing, denied the OSC Motions, which included evidence of respondent hiring someone to follow petitioner since July 2020 through at least December 2020. This includes the following facts: On November 27th 2021 between 6:46pm and 7pm MT, Zac Carvey (of Belgrade MT) informed Mr. Rusk that Roseen has hired a woman to follow me and the first time was in July 2021. Carvey stated that she is a friend of his mother's. Carvey also stated that she saw her when visiting Carvey at his new place on November 27th 2021 between 6:46pm and 7pm MT. A text between Carvey and Rusk expressly states the following: (Exhibit Z p. 16 of 25) includes a screenshot from Dec 05, 6 59 36 pm — documented in A-D below)

Rusk to Carvey: "white small suv, glasses?" (sic) (Exhibit Z p. 16 of 25)  Carvey to Rusk: "Huh?" (sic) (Exhibit Z p. 16 of 25) Rusk to Carvey: "is that her? your mom's friend that Roseen hired to follow me" (sic) "passed her in that vehicle with lights out on my way to the gym walking" (sic) (Exhibit Z p. 16 of 25) Carvey to Rusk "Oh, no she has a silver car and doesn't have glasses" (sic) (Exhibit Z p. 16 of 25)

Judge Seel stated "Anything further from petitioner?" Mr Rusk stated "I will be working on appeal, your honor."

## ANALYSIS

### STALKING AND MALICIOUS HARRASSMENT: FRIVELOUS, VEXATIOUS CONDUCT AND INTENT:

On March 2, 2021 at 8:54 PM Mr. Roseen forwards me an email he wrote to his sister, Cindy, on Mon, Feb 22, 2021 at 6:03 PM including the following statements (Exhibit C p. 2 of 2)
"I am angry, and serious, and I need to tolerate less and teach people how to treat me." (Sic) (Exhibit C p. 2 of 2)

### STALKING AND MALICIOUS HARRASSMENT:

On Mar 13, 2021 10:03 AM - On Mar 13, 2021 03:36 PM Mr. Roseen texted me stating: (Exhibit F p. 1-2 of 3)
Pg. 1 "There are things that I want to change, like my cleanliness and some parts of my hygiene." (sic) (Exhibit F p. 1 of 3) (Mr. Roseen also mischaracterizes these statements as to comments about 'parts of his body' in Mr. Roseens Muni Cases, as well.)
Pg. 2 "I do not want you to take that plane ticket, but I understand if you do, and I cannot stop you." (Sic) (Exhibit G p. 1 of 3)
Pg. 2 "Please call me. I will come to Shari's if I don't hear from you." (Sic) (Exhibit F p. 2 of 3)
Pg. 3 "I want you to tell me: "I am seeing person X today, and we are probably meeting at their house, the car or a hotel around this time." " (sic)  (Exhibit F p. 3 of 3)
"Try not to raise my voice when I feel triggered or upset." (Sic) (Exhibit G p. 1 of 2)

### MALICIOUS HARRASSMENT: LYING:

On April 7, 2021 at 8:56PM Mr. Roseen emails me his texts messages from with his siblings. This email is entitled "Shawn, Cindy, Mary". In this email, Mr. Roseen states "Thank you for forgiving me. The group texts are next." (Exhibit H p. 1 of 1)
April 8,2021 at 1:14PM Mr. Roseen emails his entire immediate family and cc's me stating the following: (Exhibit I p. 1 of 1)
"Hi everyone, I am so upset about this situation and I been working hard to try to resolve it. I need to begin by telling you that I lied to all of you in my communications during the week of March 15th, when Zach and I were on the verge of breaking up. I caused great confusion for everyone involved. In my communications I said that Zach may send you all lies about me, but this was not true. He was considering sending all of you our text communications since July, to show the objective picture. I also said that he is a "master manipulator," but this is also not true. I did not call him a psycho, but that term arose in our texts. That is also not true. I asked that we keep this within our family and I hope that you all have. If you have talked about this or shared our written communications with anyone, please correct that, and it would be helpful to let me know. If Zach is injured in the future and unable to make a living, he may pursue a claim due to third party defamation. I will be in touch with more later. I may need to add to this email to make sure that I did not miss any details. I am so sorry." (Exhibit I p. 1 of 1)

This email is in reference Exhibit G as to the group texts messages Mr. Roseen sent me as noted above in his April 7, 2021 at 8:56PM email to me. The communication referenced is from Mar 16, 2021at 10:02 PM from Mr. Roseen to all of his family, or third parties. The text stated: (Exhibit J p. 1 of 1)

"Hi everyone, I am so upset that this situation with Zach Rusk is happening, and that I must write this message. Zach has threatened to send all of you lies about me. I asked him not to, and he says he will not. However, if he sends you anything, please delete it immediately. Zach has email analytics that show if you have opened the email. I am doing this at the request of Greg, my therapist. I also believe it is the right message to send." (Sic) (Exhibit J p. 1 of 1)

### STALKING AND MALICIOUS HARRASSMENT KNOWLEDGE:
(Mr. Roseen knew what he was doing but talks about 'gaslighting' in his muni cases)

Gaslighting is **a form of manipulation that often occurs in abusive relationships**. It is a covert type of emotional abuse where the bully or abuser misleads the target, creating a false narrative and making them question their judgments and reality.

On the same page of the thread, on Mar 17, 2021 at 07:37 AM Mr. Roseen also states: (Exhibit J p. 1 of 1)

"Thanks everyone. Once again, please be careful and do not gaslight or defame Zach. It's best to keep this within our family." (Sic) (Exhibit J p. 1 of 1)

### CEASE AND DISIST EMAIL NO CONTACT FAIR NOTICE:
In April, Mr. Roseen was directed to cease and desist from contacting me.

### STALKING AND VIOLATIONS TO FIRST NO CONTACT FAIR NOTICE:
### On May 1st 2021 at 10:09am Mr Roseen emailed me the following: (Exhibit K p. 1 of 1)
"Zach, please respond….I don't want to annoy you… Is Zac with you?" (Exhibit K p. 1 of 1)

On or around May 3rd 2021 Zac Carvey and Carlos Debra Boyer provided me texts from Mr. Roseen to them. (Exhibit L p. 1 - 13) (Contacting my friends and family…)

### STALKING AND MALICIOUS HARRASSMENT: INTENT:
On June 1, 2021 at 8:11 PM Mr Roseen emailed me stating the following: (Exhibit M p. 1 - 3)

"I have lost so much….**money…**and it appears I will likely **loose more**." (Sic) (Exhibit M p. 1 of 3)

"**I have already accepted the promissory note loss**, which means that you don't have that power over me like you assumed you have." (Sic) (Exhibit M p. 2 of 3)

On June 2, 2021 at 6:42 PM Mr. Roseen emailed me: (Exhibit N p. 1 of 1)

"I do not agree with this, and I expect you to repay the debt. *The promissory note still stands*." (Sic) (Exhibit N p. 1 of 1)

On June 3rd 2021 at 10:23am Mr. Roseen texted Mr. Rusk stating: (Exhibit O p. 1 of 1)

"*Please keep me updated on the case by email*." (Sic) (Exhibit O p. 1 of 1)

On June 5, 2021 at 11:24:46 AM Mr. Roseen wrote me an email in reference to service as to SM 21-33 Small Claims Matter Rusk v. Roseen in Justice Court. In this email, Mr. Roseen stated "You do not need to reach out to Tyler." (Sic) (Exhibit O p. 1 of 1)

### SECOND CEASE AND DISIST NO CONTACT FAIR NOTICE:
On June 10th, Mr. Roseen was served a formal Cease and Desist all contact absent through a licensed attorney or process server **in good standing**. (Exhibit P p. 1 Cert of Service p. 2 Invoice for Cert of Service)

### STALKING AND MALICIOUS HARRASSMENT: LYING:
On June 13th, Mr. Roseen wrote himself an email stating (which he filed in his own June 25th TOP Case that was denied and had 601 pages to it: (Exhibit Q p. 1 of 1)

"I need to …correct **false** info, like the email I sent today to Colin." (sic) (Exhibit Q p. 1 of 1)

### STALKING AND MALICIOUS HARRASSMENT: DAMAGING PROPERTY.

On June 23rd 2021 Mediation was ordered in SM 21-33 and Mr. Roseen was served with the notice. (Exhibit Q p. 1 - 2) On or around January, 24th 2021, Judgement in the SM matter was rendered in my favor by Judge Bryan Adams. Roseen satisfied judgement on or around January, 26th 2021. (Exhibit Q p. 1 - 2)

### STALKING AND MALICIOUS HARRASSMENT: FRIVELOUS, VEXATIOUS CONDUCT AND INTENT:

On June 25th 2021 Mr. Roseen filed for a Temporary Order of Protection. It was denied. (Exhibit S p. 1 - 2) In Mr. Roseen's June, 25th 2021 (DR 21-208C) Petition, Mr. Roseen declares the following in his sworn statements: (Exhibit T p. 1 - 9) "Roseen 1" (sic) "Section 5, part B" (sic) in paragraph 3: (Exhibit T p. 5 of 9) Mr. Roseen declares "My alcohol consumption has increased significantly over the past three months …I am having difficulty curbing it and it concerns me." (sic) "Roseen 2" (sic) in paragraph 4: (Exhibit T p. 6 of 9)

Mr. Roseen declares "These issues included …the large sum of money he owes me… and his efforts to sue me and my family." (Exhibit T p. 6 of 9) "I never explicitly asked Zach to stop contacting me because…the sum of money he owes me…and his efforts to sue…" (sic) (Exhibit T p. 6 of 9) "I never felt physically threatened…" (sic) (Exhibit T p. 6 of 9)

### STALKING, MALICIOUS HARRASSMANT, ATTOURNEY MALPRACTICE, FRIVELOUS, VEXATIOUS CONDUCT AND INTENT:

On a July 7th 2021, Mr. Roseen used the same information filed in his denied June 25th 2021 (DR 21-208C) 601 page Petition under Judge Brown, to file (by Jason Armstrong) a declaration seeking a protective order in DV 21-432B under Judge McLyea. In this two page sworn declaration of Mr. Roseen's (filed by Jason Armstrong), Mr. Roseen stated and declared in part "…how I should fix parts of my body or health." (sic)  Mr. Roseen hired Mr. Jason Armstrong as his defense counsel. Evidence shows that Mr Armstrong was ***not in good standing between 2011 and October 2021 (constituting each communication from Armstrong to me on behalf of Roseens in that time period as further violations to the fair notice no contact cease and desist)***.

On July 14th 2021 Jason Armstrong was served a Cease and Desist letter. (Pg 1 of Exhibit V includes the Cert of Service) In his July 8th 2021 filing, on behalf of Mr. Roseen, in DV 21-432B, Mr. Armstrong declares  Page 6, line 17-19: (Exhibit X pages 15-17) "…Petitioner hired process server Tyler Restvedt to serve Mr. Rusk's cease-and-disist letters on several people or entities, including the Museum of the Rockies, incurring $150.00 in service fees." (sic)

On July 15th 2021 at 10:15am Jason Armstrong emailed me stating "I was served your cease and desist". (Pg. 2 of Exhibit V) Jason emailed me five more times on July 15h at 11:03am, 11:15am, 3:16pm, 4:49pm, and 5:27pm. In Jason's 5:27pm communication, Jason Armstrong demanded: *"agree to reimburse the Roseens for the costs and fees they've incurred to defend your … "Petition" " & "The Roseens will waive their right to file suit against you."* Due to the frivolousness as shown in case law following, this amounts to **criminal intimidation and extortion**[13].

　　The Tenth Circuit has commented that "§ 1927 is available against only attorneys. Steinert v. Winn Group, Inc., 440 F.3d 1214, 1222 (10th Cir. 2006). The Second Circuit has held that 28 U.S.C. § 1927 does not apply against pro se litigants, while the Ninth Circuit has held that pro se litigants may be

---

[13] **45-8-213.    Privacy in communications.** (1) Except as provided in **69-6-104**, a person commits the offense of violating privacy in communications if the person knowingly or purposely: (b)    **uses an electronic communication** to attempt to **extort money or any other thing of value from a person** or to disturb by repeated communications the peace, quiet, or right of privacy of a person at the place where the communications are received."

sanctioned under the statute. See infra Parts II.C-D. Other circuits have not been quite as clear. The Seventh and Third Circuits have recognized the split but have refused to resolve the issue because the court could sanction tmder its inherent authority. See Inst. for Motivational Living, Inc. v. Doulos Inst. for Strategic Consulting, Inc., 110 F. App'x 283, 286-87 (3d Cir. 2004); Alexander v. United States, 121F.3d312, 316 (7th Cir. 1997). The Tenth Circuit has commented that"§ 1927 is available against only attorneys," Steinert v. Winn Group, Inc., 440 F.3d 1214, 1222 (10th Cir. 2006), but has never considered the issue with respect to pro se litigants. The Fifth Circuit has noted that 28 U.S.C. § 1927 sanctions may only be imposed against attorneys; the clients "may not be ordered to pay." Matta v. May, 118 F.3d. 410, 413-14 (5th Cir. 1997). In an unpublished opinion, the Sixth Circuit ordered a pro se appellant to pay attorneys' fees as a sanction on appeal but did not consider whether a pro se litigant could be sanctioned under 28 U.S.C. § 1927. Blachy v. Butcher, 142 F. App'x 919, 920 (6th Cir. 2005). Finally, the First, Fourth, Eighth, Eleventh, D.C., and Federal Circuits have not expressed an opinion.

    The court must find that the conduct was vexatious as well as unreasonable. The unreasonableness standard poses little difficulty for the courts, but "the issue is not . . . the reasonableness of the position asserted." Instead, the inquiry is whether asserting the position is reasonable in the circumstances. The vexatious standard poses more difficulty because courts do not have a single standard to describe what constitutes vexatious conduct. The vexatious standard "requires something more than mere negligence," and conduct that constitutes bad faith is enough to meet the standard in any circuit. In the Eighth Circuit, "[s]anctions are proper ... 'when attorney conduct, viewed objectively, manifests either intentional or reckless disregard of the attorney's duties to the court.'" Once the court finds that the two elements are met, the court may require the "attorney or other person admitted to conduct cases ... to satisfy personally the excess costs, expenses, and attorney's fees reasonably incurred." Because the statute only allows the court to award excess costs, expenses, and fees, the court cannot award all costs, expenses, and fees unless the entire proceeding was baseless. Instead, the court will award costs, expenses, and fees that are "incurred in reacting to, and attempting to staunch, the multiplication of the proceedings." The award may include only what is "reasonably incurred." Therefore, a party seeking a sanction should "take all reasonable steps to minimize" costs, expenses, and fees incurred.[14] On Wednesday, July 21, 2021 3:56 PM usa1610@fedex.com wrote Petitioner the following in the entitled email subject name "Subject: Reason for non delivery of docs": "Zach, On 7/19/2021 we were unable to complete the delivery to your requested address of: Jason Armstrong CROMWELL LAW, PLLC 1871 South 22nd Ave Bozeman, MT 59718. Our Assistant Manager attempted delivery with the door being locked. No one came to open the door so he had to leave and returned the documents to our FedEx store where we informed Zach Rusk of the failed delivery. In addition around last week another associated attempted delivery of documents and was not let in by an employee who saw him at the door so he had to return the following day to deliver the documents." (EXHIBIT Z pg. 1 of 25) In Mr. Roseen's August, 11th 2021 (CL 21-86) Petition, Mr. Roseen declares, again, the following in his sworn statements: "Roseen 1" (sic) "Section 5, part B" (sic) in paragraph 3: (Exhibit T p. 5 of 9) Mr. Roseen declares "My alcohol consumption has increased significantly over the past three months …I am having difficulty curbing it and it concerns me." (sic) "Roseen 2" (sic) in paragraph 4: (Exhibit T p. 6 of 9) Mr. Roseen declares "These issues included …the large sum of money he owes me… and his efforts to sue me and my family." (Exhibit T p. 6 of 9) In Petitioners case against Roseen in District Court (filed April 28th 2021), as to Roseens slander and libel of me, Jason Armstrong, on behalf of Roseen filed a declaration stating that Rusk served the Museum of the Rockies. This is patently false again, and is shown through the exhibit of text messages between Tyler

_____

[14] STATEMENT OF FACTS: 1. Not an Attorney. 2. Pro Se Litigant. 3. Non-vexatious litigant.

Restveld and me stating the following: Me to Tyler: can you also send me corrected past certs of service? Jason lied about me trying to serve a museum you had listed on one…assumed they were all correct and didnt say that until after he brought it up and after they were filed. You listed "museum of the rockies" one you served for me he said." Tyler replied to me via text message stating "I served Shawn AT the museum" (sic) I texted Tyler back stating "why did you serve shawn at the museum? Did he ask you to?" Tyler replied via text stating "I met him there - I think tree was working nearby, or something" (sic) (EXHIBIT Z pg. 2 of 25)

In the SM-21-33 Rusk v. Roseen action: On July 30th, Jason Armstrong filed a frivolous motion to continue the trial set for early August. Jason did this three more times, with no valid reasoning. The last time Jason Armstrong did this in the SM action, was after Judge Adams ordered Jason Armstrong to stop filing filings in that case, as the opposing party was unrepresented, and in a Justice Court matter, when one side is unrepresented, no side may be represented. I had already informed Armstrong of that statute in writing well before. Moreover, Judge Bryan Adams granted Judgement in Petitioners favor barely weeks ago. (EXHIBIT Z Pg. 3-10 of 25)

### STALKING, MALICIOUS HARRASSMENT,  JUDICIAL IMPROPRIETIES:

On August 16 2021 I cancelled my membership at the Ridge Gym (downtown) where Mr. Roseen and I were on a couples membership since January 2021. (EXHIBIT Z Pg. 11-14 of 25) This location is closest to Mr. Roseens apartment of 17 W Lamme St Bozeman MT 59715. Within a day or so after, I signed up for Access Fitness on 7th Ave Bozeman MT 59715. This was their new location and turned out to be closest to my 211 N 10th Ave Bozeman MT 59715 address. Several months later, on Tuesday November 9th at 11:36am I am notified that Mr. Roseen has evidently recently signed up for my new gym of several months. (EXHIBIT Z Pg. 14 of 25) The same day I requested cancelation of my membership at Access Fitness.  (EXHIBIT Z Pg. 15 of 25) Within a day or so after, I signed up for Fuel Fitness which turned out to be closest to my new apartment complex after moving from 211 N 10th Ave on or around November 20th 2021. On November 27th 2021 between 6:46pm and 7pm MT, Zac Carvey (of Belgrade MT) informed Mr. Rusk that Roseen has hired a woman to follow me and the first time was in July 2021. Zac stated that she is a friend of his mother's. Zac also stated that she saw her when visiting Zac at his new place on November 27th 2021 between 6:46pm and 7pm MT. A text between Zac Carvey and Rusk expressly states the following: (Exhibit Z p. 16 of 25) includes a screenshot from Dec 05, 6 59 36 pm — documented in A-D below) Me to Zac Carvey: "white small suv, glasses?" (sic) (Exhibit Z p. 16 of 25) Zac Carvey to me: "Huh?" (sic) (Exhibit Z p. 16 of 25) Me to Zac Carvey: "is that her? your mom's friend that Roseen hired to follow me" (sic) "passed her in that vehicle with lights out on my way to the gym

walking" (sic) (Exhibit Z p. 16 of 25) Zac Carvey to me "Oh, no she has a silver car and doesn't have glasses" (sic) (Exhibit Z p. 16 of 25)[15]

   **The Court failed to find cause (when there was clear probable cause shown) in the filed OSC Motions and motion to expedite with this evidence. This shows clear impropriety and warrants disqualification, if not removal especially, as noted below in case law. Judge Seel intentionally and deliberately failed to act expeditiously and effectively in administering the courts business in this case.[16]** Also see January 5th 2022 order where Judge Seel expressly stated that Petitioner filed a motion to continue this case, that was never filed nor written by petitioner. When objection was quickly filed, the Court never corrected. This demonstrates **egregious ineffectiveness and bias** in Judge Seals administration of the courts business in this case. In any other cases involving Petitioner, Judge Seal is bound to recuse, or the filing of a motion for substitution of judge is mandatory based on attorney ethics. Furthermore, in the February 24th 2022 hearing, in the first ten to twenty minutes, Judge Seal stated commentary that is prejudicial as to the Motion in Lamine. Judge Seel expressly stated "**I don't understand" [this law] but then ruled on it adversely** to Petitioner. Judge Seel stated many times that he doesn't understand certain laws or statutes or case law in those thirty minutes of the hearing, but then ruled adversely to Petitioner in terms of the correct interpretation (**matters directly related to the Respondent and Petitioner are not to be excluded**). See below case law that shows how this violates the judicial cannons. Judge Seel's unlawful criminal intimidation caused Petitioner significant emotional distress in that hearing and concerns over raising appropriate objections or pressing further for clarification and attempts to offer clarification. Judge Seel **impugned upon my civil rights and**

---

[15]    Pursuant to 45-5-626 as to violations of orders of protection states under (1) that except as provided in 50-32-609, a person commits the offense of violation of an order of protection if the person, with knowledge of the order, purposely or knowingly violates a provision of any order provided for in 40-4-121 or an order of protection under Title 40, chapter 15. It may be inferred that the defendant had knowledge of an order at the time of an offense if the defendant had been served with the order before the time of the offense. Service of the order is not required upon a showing that the defendant had knowledge of the order and its content.

   45-2-301.    Accountability for conduct of another. A person is responsible for conduct that is an element of an offense if the conduct is either that of the person or that of another and the person is legally accountable for the conduct as provided in 45-2-302, or both.

   45-2-302(3).    When accountability exists. A person is legally accountable for the conduct of another when: (3)   either before or during the commission of an offense with the purpose to promote or facilitate the commission, the person solicits, aids, abets, agrees, or attempts to aid the other person in the planning or commission of the offense.

   45-2-303.    Separate conviction of person accountable. A person who is legally accountable for the conduct of another that is an element of an offense may be convicted upon proof that the offense was committed and that the person was accountable although the other person claimed to have committed the offense has not been prosecuted or convicted, has been convicted of a different offense, is not amenable to justice, or has been acquitted.

[16]    18 U.S. Code § 401 - Power of court: A court of the United States shall have power to punish by fine or imprisonment, or both, at its discretion, such contempt of its authority, and none other, as— (1) Misbehavior of any person in its presence or so near thereto as to obstruct the administration of justice; (2) Misbehavior of any of its officers in their official transactions; (3) Disobedience or resistance to its lawful writ, process, order, rule, decree, or command. Rule 41. Dismissal of Actions: (2) By Court Order; Effect. Except as provided in Rule 41(a)(1), an action may be dismissed at the plaintiff's request only by court order, on terms that the court considers proper. If a defendant has pleaded a counterclaim before being served with the plaintiff's motion to dismiss, the action may be dismissed over the defendant's objection only if the counterclaim can remain pending for independent adjudication. Unless the order states otherwise, a dismissal under this paragraph (2) is without prejudice. (b) Involuntary Dismissal; Effect. If the plaintiff fails to prosecute or to comply with these rules or a court order, a defendant may move to dismiss the action or any claim against it. Unless the dismissal order states otherwise, a dismissal under this subdivision (b) and any dismissal not under this rule—except one for lack of jurisdiction, improper venue, or failure to join a party under Rule 19—operates as an adjudication on the merits.

**attempted to extort me out of exercising my rights** in this case and the hearings, not to exclude parallel cases tied to it in which Judge Seel has made **very inappropriate and prejudicial commentary, as well as patently false statements** in  hearings causing significant emotional distress to Petitioner. Seel's engagement in, acting in concert of, and allowing of the delays, has cost Petitioner over $300/month.[17]

        Pursuant to 3-1-803 as to disqualification of judges -- all courts states that any justice, judge, justice of the peace, municipal court judge or city court judge must not sit or act in any action or proceeding: 1.   To which he is a party, or in which he is interested. 2.   When he is related to either party or any attorney or member of a firm of attorneys of record for a party by consanguinity or affinity within the third degree, computed according to the rules of law; 3.   When he has been attorney or counsel in the action or proceeding for any party or when sitting in a case on appeal he as a judge in the lower court rendered or made the judgment, order, or decision appealed from.[18]

        Pursuant to 3-1-805 as to disqualification for cause states under 1.   Whenever a party to any proceeding in any court shall file an affidavit alleging facts showing personal bias or prejudice of the presiding judge, such judge shall proceed no further in the cause. If the affidavit is filed against a district judge, the matter shall be referred to the Montana Supreme Court. If the affidavit is in compliance with subsections (a), (b), and (c) below, the Chief Justice shall assign a district judge to hear the matter. If the affidavit is filed against a judge of a municipal court, justice court, or city court, any district judge presiding in the district of the court involved may appoint either a justice of the peace, a municipal judge or a city court judge, to hear any such proceeding.

        "On summary judgment, the judge appropriately may determine, not only the currently applicable law, but whether that law was clearly established at the time an action occurred. If the law at that time was not clearly established, an official could not reasonably be expected to anticipate subsequent legal developments, nor could he fairly be said to **"know" that the law** forbade conduct not previously identified as unlawful. ....If the law was clearly established, the immunity defense ordinarily should fail." Harlow et al v. Fitzgerald, 457 U.S. 800, 818 (1981).

        An abuse of discretion is a polite way of saying a trial judge has made such a bad mistake ("clearly against reason and evidence" or against established law) during a trial or on ruling on a motion that a person did not get a fair trial. A court of appeals will use a finding of this abuse as a reason to reverse the trial court judgment. Examples of "abuse of discretion" or judges' mistakes include not allowing an important witness to testify, making **improper comments** that might influence a jury, showing bias, or making rulings on evidence that deny a person a chance to tell his or her side of the matter. This does not

---

[17]     1889 MT Const., Art. 3, § 6. MT CONST Art. 2, § 16, MT CONST Art. 2, § 16. 42 U.S.C.A. § 1983 Civil action for deprivation of rights [Notes of Decisions subdivisions XIV to XXIV] Section 16. The administration of justice. Courts of justice shall be open to every person, and speedy remedy afforded for every injury of person, property, or character. No person shall be deprived of this full legal redress for injury incurred in employment for which another person may be liable except as to fellow employees and his immediate employer who hired him if such immediate employer provides coverage under the Workmen's Compensation Laws of this state. Right and justice shall be administered without sale, denial, or delay.

     1889 MT Const., Art. 3, § 10. MT CONST Art. 2, § 7, MT CONST Art. 2, § 7. Section 7. Freedom of speech, expression, and press. No law shall be passed impairing the freedom of speech or expression. Every person shall be free to speak or publish whatever he will on any subject, being responsible for all abuse of that liberty. In all suits and prosecutions for libel or slander the truth thereof may be given in evidence; and the jury, under the direction of the court, shall determine the law and the facts.

[18] ORDER SUPERSEDES SECTION 3-1-801 and 802, MCA: By the authority of Article VII, Section 2, of the 1972 Montana Constitution, this rule supersedes and is to be used to the exclusion of the rule on disqualification and substitution of judges adopted by Supreme Court Order dated June 30, 1981, and published as section 3-1-801 and 802, MCA.

mean a trial or the judge has to be perfect, but it does mean that the judge's actions were so far out of bounds that someone truly did not get a fair trial.

A Judges lack of expeditiousness by failing to rule on pending motions for periods or lengths of up to a year at times, **especially on motions which require expedited treatment** such as discovery motions, **along with added commentary**, devoid of evidence of fact, **violate Canon 1**. When a judge does this, they have repudiated fundamental national, moral, and constitutional principles of equality. They have repudiated basic, indisputable principles of federal constitutional law as established by decisions of the United States Supreme Court. They have expressed "contempt" toward the United States Supreme Court rules and generally disparaged the Supreme Court. Their conduct neither "maintains" nor "observes" a "high standard of conduct," as required by Canon 1. **Their inflammatory, hostile rhetoric severely undermines "public confidence" in the federal judiciary.**

A **lack of expeditiousness** can constitute **extreme impropriety** and the appearance of impropriety that violate Canons 2 and 2A. A complainant can then submit that any "reasonable mind" would conclude that the judge's "integrity, impartiality, temperament, [and] fitness to serve as a judge" are "impaired" ( See Hon. Carl E. Stewart, Abuse of Power and Judicial Misconduct: A Reflection on Contemporary Ethical Issues Facing Judges, 1 U. St. Thomas L.J. 464, 477 (Issue no. 1, 2003) ("A hallmark of the judiciary has been its historical posture of neutrality and impartiality toward litigants and the disputes they bring to the courts for resolution. Ascendance to the bench therefore represents more than a mere cloak of repudiated and criticized fundamental constitutional principles declared by the United States Supreme Court.

Canon 3 of the Code of Conduct of United States Judges provides that **"a judge should perform the duties of the office fairly, impartially, and diligently."** (Emphasis added.) Canon 3A (3) provides that "**[a] judge should be patient, dignified, respectful, and courteous"** to all persons "with whom the judge deals in an official capacity." The Commentary to Canon 3A states that **"[t]he duty to be respectful includes the responsibility to avoid comment or behavior that could be interpreted as harassment, prejudice or bias."**

A Judge's **unduly delaying tactics**, evince a dramatic and appalling **lack of "fairness" and "impartiality."** Based upon the afore, Plaintiff cannot reasonably expect "fairness" or "impartiality" from that Judge. Further, no objective observer could conclude that the treatment of the party in such a case would be consistent with "the duty to be respectful."[19]

### STALKING, MALICIOUS HARRASSMENT, ATTOURNEY MALPRACTICE, JUDICIAL IMPROPRIETIES:

In CL-115-21-109 Rusk v. Roseen as to my Temporary Order of Protection against Jason Armstrongs client Thomas Roseen: On January 4th 2022, Jason Armstrong filed a rule 11 violating pleading with patently false statements. In this pleading signed and filed by Jason Armstrong, Jason stated "Respondent files this Response to Motion for Continuance. Respondent does not oppose Petitioners Motion to continue this matter…" This statement is false because this matter is CL-115-2021-0000109 and Petitioner never filed a motion to continue this matter. Here, Jason Armstrong mislead the Court but the Court failed to correct. (Exhibit Z p. 17-19 of 25)

Pursuant to Rule  7 as to Ex parte matters states that all requests for extension of time or continuances and other permissible ex parte matters shall be in writing. The request must provide that the opposing party has been contacted and given reasonable notice of: (a)   the time and place of the ex parte

---

[19] Further case law provided in Appendix E.

conference or meeting, (b)    the substance of the order sought, and (c)    whether the party opposes the matter.

Pursuant to Rule  18 as to continuances states under (a) that a continuance or resetting of a trial or hearing may be granted upon a showing of good cause. The motion for continuance must be made in writing and served upon the opposing party or counsel. (b)    No continuance will be granted if not timely made. A continuance will not be granted if a party appears at the time set for a hearing or trial unprepared. (c)    A continuance will not be granted except for good cause, without timely notice given to all parties.

On December 26th 2021, at 9:03pm, Tyler Restveld emailed a declaration he, Tyler, wrote and signed under penalty of perjury:  "Declaration of Service: I, Tyler Restvedt, under penalty of perjury, do hereby certify that the foregoing information is true and correct to the best of my knowledge. On August 7th, 2021, I, Tyler Restvedt, of Valley Process Service, served a box of documents to Jason Armstrong. This was a routine service, however, Jason's reaction to service kind of took me aback, as I could tell Jason was upset with the service…Jason invited me to visit with him in a separate room within his office building. He then asked me if I had any idea who Zach Rusk was. He asked how, and if, Zach was compensating me, as he believed Zach was unemployed. I assured him that Zach had been very good about paying me for my services, and in a timely manner. Jason gave me a stern warning with regards to working with Zach, as the legal proceedings that Zach was invoking, were causing much duress to his client(s)…" (Exhibit Z p. 20 of 25)

In the Montana Supreme Court in DA 21-0398, Jason Armstrong mislead the Justices, like he mislead Judge McLyea, Judge Adams and Your Honor, as on February 17, 2022 at 8:45:06 AM MST Jason Armstrong emailed me a motion of his to extend time to respond. In this motion Jason Armstrong stated that he 'is not allowed to contact petitioner'. But he still did. And Jason Armstrong provided zero basis for bringing his motion in good faith or for good cause. (Exhibit Z p. 20-25)

## CAUSE OF ACTION

36. Plaintiff incorporates all previous paragraphs as if re-written herewith.

37. At all relevant times herein alleged the defendants acted under color of law.

Causes of action alleged herein arise from factual events occurring in the eighteenth judicial district, Bozeman Montana Case numbers CL 21-109, DV 22-236; SM 21-33, DV 21-432B, DA 21-0398, CL 21-86, CL 21-87, CL 21-96, TK 21-1993, TK 21-2049, TK 21-2093.

38. The defendants conspired and acting in the concerted action, in the furtherance of conspiracy perpetrated several overt acts be it fraud upon the court as a pretext to their unauthorized Montana cases alleging intentional torts and thus the defendants violated 42 U.S. Code§ 1983 and caused Plaintiff's injuries.

## NOTICE OF UNCONSTITUTIONAL STATE STATUTE

39. Plaintiff incorporates all previous paragraphs as if re-written herewith.

40. The requirement of clarity in regulation is essential to the protections provided by the Due Process Clause of the Fifth Amendment. (Grayned v. City of Rockford, 408 U.S. 104, 108).

41. While the statute can be generally constitutional the plaintiff herein alleges that Montana  45-5-220 as applied against him operates unconstitutionally as to him because "vagueness. (Sabri v. US, 541 U.S. 600, 609).

42. When the state court, either expressly or by necessary implication, gives effect to a subsequent law of the state, whereby the obligation of the contract is alleged to be impaired, a federal question is presented (Cross Lake Club v. Louisiana, 224 U.S. 632).

43. The defendants knew that attempting to deliver legal services or representation, and judicial opinions with deceit is a felony.

44. The defendants knew that in absence of abiding by rules and the judicial cannons, as well as law, the statutes deployed only in the furtherance of defendants' conspiracy to deprive Plaintiff of his  rights to property and liberty. Plaintiff's claim is rather transparent because several state and federal judges have seemingly no understanding how to interpret it (Lounsbury, Supra) or it has been deliberately misused by the lawyers colluding with the state judges to shield Montana's dishonest state bad actors and liabilities outstanding from their felonies.

45. Utah Appeals Court held ..." if arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards for those who apply them. A vague law impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an ad hoc and subjective basis, with the attendant dangers of arbitrary and discriminatory applications" ...  (Grayned v. City of Rockford, US. 104, Musser v. Utah, 333 US 95).

46. Moreover, there are certainly public justice issues involved here when the Montana victims of dishonest practitioners are denied their constitutional protection and remedies under the pretext of state law; it is certainly not fair or just when a dishonest practitioner in Montana is permitted to invoke any immunity statute by the corrupt Montana lawyers as a shield to protect practitioners' fraud or deceit he/ she premeditatedly deploys upon his clients to increase his profits: everyone knows that is not negligence.

### VIOLATION OF 42 U.S.C Section 1983 AND CONSPIRACY TO DEFRAUD PLAINTIFF OF HIS FREE EXERCISE AND ENJOYMENT OF HIS CONSTITUTIONAL RIGHTS & EQUAL PROTECTION UNDER US CONSTITUTION AND LAWS.

47. Plaintiff incorporates all previous paragraphs as if re-written herewith.

Conspiracy with a state official is sufficient to satisfy the state action requirement of Section 1983. [Adickes v. S. H. Kress & Co., 398 US 144].

48. At all relevant times herein Plaintiff was entitled to his Constitutional guaranties including his right to due process, right to a jury trial & equal protection under law. [U.S.C. Am.1:5;7;14]. 49. At all relevant times herein Dr. Jiricko was entitled to the constitutional privileges including his right to access to the courts for timely redress of his grievances. [U.S. Cons. Amend. 1; 5; 7; 14 and Utah Cons. ART1 Sec 11].

50. In violating Plaintiff's constitutional rights as herein alleged, the defendants were acting in concert and under the color of law, as the defendants are either the Montna City or State employees or as lawyers or private persons acting in concert and in conspiracy with the city and state actors and hence state actors under the law.

51. The defendants knew full well that Petitioners Complaints correctly states his right of action under the US Const. Amend. I & V & VII & XIV and under the Utah Const. and laws for redress of his injuries caused by defendants' engagement be it under the legal framework of common law or be it under the Montana statutes and binding precedents.

52. Yet, the Defendants acting in the concert and in furtherance of conspiracy to deprive Petitioner of his right to judicial remedy, his property and liberty interest due to him under the law ... the defendants retaliated against Petitioner for filing his pro se actions in Montana Courts and cunningly devised a scheme aimed to impair & obstruct Petitioners prosecution, to discredit him and to deliberately move against him in such way so at the end his action was unconstitutionally dismissed on 7/30/21 (DV 21 432B), 2/24/22 (CL 21-109), March 22nd 2022 (DA 21-0398); in deliberately carrying out such unlawful scheme against Petitioner, the defendants perpetrated fraud upon the court and willfully trampled upon Petitioner's federal and state constitutional rights in the violation of 42 USCS § 1983. In committing the

acts complained of herein, Defendants acted under color of law to deprive Plaintiffs of his constitutionally protected rights under the First, Fifth, Sixth, Seventh & Fourteenth Amendments to the Constitution of the United States and the Utah Constitution and including, but not limited to his right to be free from fraud and not to be deprived of liberty or property without due process of law.

Due process of law and equal protection of laws are secured if the laws operate on all alike and do not subject the individual to an arbitrary exercise of powers of government. [Duncan v Missouri 152 U.S. 377]. A liberty interest may arise from the Constitution itself, Wilkinson v. Austin, 545 U.S. 209; It is abundantly clear that one reason the legislation was passed was to afford a federal right in federal courts because, by reason of prejudice, passion, neglect, intolerance or otherwise, state laws might not be enforced and the claims of citizens to the enjoyment of rights, privileges and immunities guaranteed by the Fourteenth Amendment might be denied by the state agencies. Monroe v. Pape, 365 US 167.

## CONSPIRACY

53. Plaintiff incorporates all previous paragraphs as if re-written herewith

54. The Defendants acting in furtherance of meeting of their minds participated in a common design through a concerted action to deprive Petitioner of his constitutional rights and privileges and to discredit him, perpetrated fraud upon the court in their cover up attempt.

55. The Defendants at various times, while engaged in the continuing conspiracy to retaliate and do deprive Plaintiff of his property in concerted action thus completed the tort of civil conspiracy causing Plaintiff's injuries. As a result of the defendants' concerted action and conspiracy, Plaintiff was deprived of his liberty and property rights to be free from arbitrary or autocratic governmental control & thus denied his rights to fully enjoy his Constitutional guaranty.

## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

56. Plaintiff incorporates all previous paragraphs as if re-written herewith.

57. Lawyers have a positive duty to refrain from intentional tortious acts. Defendants court actions deliberately inflicted severe emotional distress upon the Plaintiff by interfering with his civil rights, conspiring against him and blatantly abusing the legal process thereby causing him pecuniary and non-pecuniary as well as physical injuries. Defendants' conduct was deliberate, willful, extreme, outrageous, distressful and such it is intolerable in our society. Plaintiff is a reasonable person who has been forced to expend countless hours in his honest efforts and attempts to rectify the entire matter, to protect and defend his liberty and property rights and privileges not be treated as a second class citizen.

58. The emotional distress and physical stress symptoms experienced by the Plaintiff are quite severe, causing him mental pain, anguish, humiliation, severe headaches, palpitations, exhaustion, sleeplessness, bodily stress & fatigue and other physical symptoms; this shameful matter also magnifies his injuries he suffered in hands of Defendants and residual effects due to his previous back pain injuries; In committing the aforementioned acts, each Defendant directly & proximately injured and caused Plaintiff's emotional distress and stress.

## FRAUD UPON THE COURT.

58. Plaintiff incorporates all previous paragraphs as if re-written herewith

59. Whenever any officer of the court commits fraud during a proceeding in the court, he/she is engaged in "fraud upon the court". Bulloch v. United States, 763 F.2d 1115, 1121 (lOth Cir).

60. The defendants filed declarations, affidavits and pleadings which willfully & blatantly lied to the court and perpetrated fraud upon the court calculated as a cover up of the disputed issues of facts relating to the defendants unlawful acts material to the judgments pending before the Courts.

61. By the defendants perpetrating fraud upon the court by the courts ensuing Orders dated above, enacted as a cover up of the defendants' fraud (while the judges and justices were on the direct bill of such unlawful conduct before it) they not only committed judicial misconduct but disregarded the public welfare rules fixed by the US Supreme Court:

30. Surely it cannot be that preservation of the integrity of the judicial process must always wait upon the diligence of litigants. The public welfare demands that the agencies of public justice be not so impotent .... (Hazel v. Atlas, 322 U.S. at 246, 64) & & Courts may not exercise their inherent powers in conflict with the statutory or constitutional requirements. (Kovilic Contrs., v. Missbrebber 106 F 3d 768).

62. The Judges and Justice Defendants as a cover up of the defendants' conspiracy issued their unconstitutional Orders noted on dates above, in the violation of due process and Petitioners constitutional rights; therefore, the Order are void and of nullity.

63. A void judgment is not entitled to the respect accorded a valid adjudication, but may be entirely disregarded, or declared inoperative by any tribunal in which effect is sought to be given to it.

64. It is attended by none of the consequences of a valid adjudication. It has no legal or binding force or efficacy for any purpose or at any place.... It is not entitled to enforcement ... All proceedings founded on the void judgment are themselves regarded as invalid. (30A Am Jur Judgments 44).

65. The defendants', most of which are experts in the law and its application, knew full well that the the statutes defendants' calculatingly deployed as pretext was a set up designed to unconstitutionally deprive and to punish Petitioner, a pro se litigant, for exercising

his constitutional guaranty to obtain remedy for his injuries by due course of law.

65. Government actions, which standing alone do not violate the Constitution may nonetheless be constitutionally wrong, if motivated by a desire to punish an individual for exercise of his constitutional rights. [Mitchell v. Horn, No.98-1932, 2003].

66. Defendants' fraud upon the court made a mockery of Petitioner's Constitutional due process guaranty and thus the defendants violated 42 U.S.C Section 1983 as matter of law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests judgment against the Defendants:

A. For appropriate declaratory relief regarding the unlawful and unconstitutional acts and practices of the Defendants, including the enjoining and permanent restraining of these constitutional violations, including the direction to Defendants to take such affirmative action as is necessary to ensure that the effects of the unconstitutional and unlawful activities and practices are eliminated.

B. Plaintiff demands money damages in the amount to be determined by the jury trial.

C. Defendants acts are willful and unconscionable, designed to deprive Petitioner of his property and to retaliate and to punish a pro se Montana litigant; in doing so they deliberately obstructed and poisoned his cases noted above, apparently counting upon each co-conspirator to apply its respective intrinsic individual and judicial powers and to shield each other from their wrongdoing. Plaintiff is therefore entitled and prays for punitive damages.

D. Plaintiff prays for an award of reasonable expenses and cost expended in prosecuting this action & for such other and further relief to which Plaintiff may show himself be justly entitled.

E. Plaintiff respectfully request a trial by a jury on the issues so triable.

**<u>DECLARATION UNDER PENALTY OF PERJURY:</u>**

The undersigned declares under penalty of perjury that he is the plaintiff in the above action, that he has read the above amended complaint and that the information contained therein is true and correct to his best knowledge and belief. 28 U.S.C. §1746; 18 U.S.C §1621.

Executed on March 24th 2022.

<u>/s/ Zachary Rusk</u>

*in propria persona*